UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

===========================================================

RUDOLPH MILLS,

                    Plaintiff,

        v.                                    **DECISION AND ORDER**

                                              19-CV-1178S

STEUBEN FOODS, INCORPORATED,
ET AL.,

                    Defendants.

===========================================================

## I.      Introduction

This is an action under Title VII, 42 U.S.C. §§ 2000e to 2000e-17, Section 1981,

42 U.S.C. § 1981, and alleges discrimination in violation of New York State law,

N.Y. Exec. Law ch. 15, §§ 290-301 (Docket No. 19, Am. Compl.).  Plaintiff summarized

his claims, as follows:

> "This case involves numerous blatant and abhorrent instances of
> racial discrimination in the workplace as well as an appalling absence of
> accountability and inexcusable, officially sanctioned bullying and retaliation
> at Defendant, Steuben Foods, Inc., after the Plaintiff, Rudolph Mills, a loyal
> eleven-plus year employee at Steuben, made numerous complaints about
> shocking and wildly inappropriate racial slurs used against him by
> supervisors and managers. After Plaintiff complained about supervisors and
> managers routinely and openly referring to him as a "**NIGGER**", a "**COON**"
> and a "**MONKEY**," Defendants' Human Resources managers and
> supervisory personnel, as a matter of course, told Plaintiff to "**LEAVE IT
> ALONE**" and he was threatened with termination and eventually terminated
> for continuing to complain. Instead of complying with their moral and legal
> obligations to address and correct the shockingly commonplace racial
> discrimination, Defendant Steuben Foods elected to take the most
> irresponsible, despicable and illegal step of terminating Plaintiff's
> employment because of his complaints and objections."

(Id. at page 2 (emphasis in original); see also Docket No. 1, Compl. at page 2.)

Before this Court is Defendants' second Motion to Dismiss (Docket No. 21; cf. Docket Nos. 13 (first Motion to Dismiss), 22 (Order of Jan. 3, 2020, motion denied as moot)).  Defendants argue Plaintiff's claims in his Amended Complaint are time barred and he failed to exhaust administratively his Title VII claims (Docket No. 21, Defs. Memo. at 6-10, 10-17).  They also contend that Plaintiff's New York State Human Rights Law claims were waived when Plaintiff pursued a New York Labor Law § 740 claim in his original Complaint (id. at 17-20).  They reiterate arguments stated in the now moot initial Motion to Dismiss (see generally Docket No. 14).

For the reasons stated herein, Defendants' second Motion to Dismiss (Docket No. 21) is GRANTED IN PART, DENIED IN PART.

## II.    Background

### A.  Facts and Pleadings

#### 1.  Facts

Plaintiff, an African American, sues his former employer, Steuben Foods, Incorporated, its supervisors[1] and human resource[2] staff (collectively "individual Defendants") for racial slurs and other acts of discrimination he endured as summarized above (Docket No. 1 Compl.; Docket No. 19, Am. Compl. at page 2, ¶ 8).

Plaintiff alleges racial discrimination, hostile work environment (but cf. Docket No. 21, Defs. Memo. at 8, noting that the body of the pleading did not state hostile work environment claim despite allegation in "Nature of the Case" provision), retaliation, and

---

[1]Defendants Eric Peterson, Kenneth Stanley, Joseph Renaldo, John Cavar, and Debra Gorski, as well as the late George Peterson who, but for his death, would have been named a Defendant in this action, Docket No. 19, Am. Compl. ¶¶ 13, 15-18, 19, at page 8 n.2.

[2]Defendant Andrea Scanzuso, Docket No. 19, Am. Compl. ¶ 14.

wrongful termination from September 2014 until his discharge on August 30, 2017 (Docket No. 19, Am. Compl. ¶¶ 7, 73).  Plaintiff began to work at Steuben Foods' Elma, New York, plant in May 2010 (id. ¶ 20).

In September or October 2014, Plaintiff complained that there was a leakage of milk on the production line.  Defendant supervisor Debra Gorski yelled asking why her production line was down and said, "always a Nigger[3]" (id. ¶ 21).  Plaintiff then complained to supervisors and managers about the slur, but Defendants John Cavar and Andrea Scanzuso told Plaintiff to "leave it alone" or he would be suspended (id. ¶¶ 22-23, 24).  Cavar then said Plaintiff could not return to work until he was contacted by human resources and Scanzuso in human resources suspended Plaintiff for three days for complaining about Gorski and her slur (id. ¶¶ 25-26).

In April 2015, Plaintiff was told by Defendant Eric Peterson that Plaintiff was hired only because they thought Plaintiff was an "Indian and not a N____" (id. ¶ 27).  Cavar witnessed this and tried to diffuse the incident by saying that Eric Peterson was joking, and Plaintiff was advised should leave it alone (id. ¶ 28).  Plaintiff complained to Defendant Kenneth Stanley and another (non-party) manager (id. ¶¶ 29-30).  They promised to investigate the incident, but no discipline resulted from this racist statement (id. ¶¶ 30-31).

From April 2015 to sometime in 2017 prior to Plaintiff's termination, Eric Peterson routinely repeated that Plaintiff only was hired because Steuben Foods believed that Plaintiff was an "Indian" and not at "N___" (id. ¶ 33).  Plaintiff also routinely complained

---

[3]Hereinafter "N___."

about Eric Peterson's slurs, but to no avail (id. ¶ 34).  Instead, Defendants routinely threatened Plaintiff with discipline or termination for his repeated complaints (id. ¶ 35).

From May 2015, Plaintiff also complained to Cavar and the late George Peterson (see id., at page 8 n.2) about repeated denial of a promotion (despite training peers and new hires) Defendants told Plaintiff that he would be promoted if Plaintiff left his shift. Plaintiff was not promoted for two years while he believed less qualified, less tenured, and non-African Americans were promoted (id. ¶ 38).  He contends that he was denied promotion due to his race and his complaints about racist comments (id. ¶ 39).

In April 2016, Eric Peterson asked Plaintiff for Oxycodone (prescribed to Plaintiff after he returned from medical leave), offering money or overtime hours in exchange for Oxycodone.  Plaintiff refused and Eric Peterson became irate and said, "who does this N___ think he is?"  (Id. ¶ 40.)  Plaintiff complained to Scanzuso but without a response (id. ¶ 41).  In July or August 2017, Plaintiff accused Eric Peterson of breaking into his locker to obtain Plaintiff's Oxycodone without any discipline from Steuben Foods (id. ¶¶ 55-59).

On or about August 2016, George Peterson berated Plaintiff for paging a maintenance supervisor without permission of a supervisor; George Peterson reportedly said, "this monkey doesn't understand the chain of command" (id. ¶ 42).  George Peterson then sent Plaintiff home prior to the end of his shift (id. ¶ 43).  Steuben Foods never disciplined George Peterson for calling Plaintiff a "monkey" (id. ¶ 44).

On or about July 2017, Gorski wrote "F____[4] N____" in what appeared to be lipstick on the side of Plaintiff's car (id. ¶ 52).  Plaintiff complained of the incident and he was promised it would be dealt with (id. ¶ 53) but no corrective action was taken (id. ¶ 54).

In August 2017, Plaintiff detected a peroxide leak into a filling machine, and he reported this to the acting shift supervisor, Eric Peterson.  Peterson ordered Plaintiff to run the line despite the potential for contamination, but Plaintiff refused.  (Id. ¶¶ 66-69.)  Eric Peterson then shouted at Plaintiff, yelling, "tell that f____ coon to start up that filler right now or I'm sending him home!" (Id. ¶ 70).  Plaintiff reported this incident to human resources as did a witness coworker anonymously (id. ¶¶ 71-72).

On August 30, 2017, Defendant Steuben Foods terminated Plaintiff (id. ¶ 73).  Plaintiff applied for unemployment benefits and the administrative law judge concluded that Plaintiff did not engage in misconduct to warrant termination or disqualify him from benefits (id. ¶ 75).

## 2.  Administrative Proceedings

Plaintiff filed his Equal Employment Opportunity Commission ("EEOC") Charge on February 8, 2018 (id. ¶¶ 3, 76; cf. Docket No. 21, Defs. Atty. Decl. ¶ 3, Ex. A (EEOC Charge, dated Feb. 6, 2018, received Feb. 8))[5].  The Commission issued to Plaintiff a Right to Sue Letter on June 6, 2019 (Docket No. 19, Am. Compl. ¶ 4).  Plaintiff claims that he filed his action within 90 days of receipt of that Letter and had exhausted all administrative remedies (id. ¶ 5).

---

[4]Expletive deleted.
[5]See Colquitt v. Xerox Corp., No. 05CV6405, 2010 WL 3943734, at *1 n.2 (W.D.N.Y. Oct. 7, 2010) (Telesca, J.), in Rule 12(b)(6) motion, Court take judicial notice of public records of the EEOC and NYSDHR, aff'd, 546 F. App'x 26 (2d Cir. 2013) (summary Order)

Defendants contend that the EEOC transferred Plaintiff's Charge to the New York State Division of Human Rights (or "NYSDHR") (Docket No. 21, Defs. Atty. Decl. ¶ 4). There, Plaintiff complained that he was subjected to unfair treatment because he complained about working conditions (excessive hours, altering employee time clock hours).  He also complained about the racial derogatory remark (probably the September or October 2014 incident with Gorski) that the supervisor reacted by suspending Plaintiff for three days.  He then noted his termination on August 30, 2017, on the false claim that he altered documents.  He concluded that he believed that he was subjected to unfair treatment and falsely terminated because of his race.  (id., Ex. A.)

On March 28, 2019, Plaintiff amended his complaint with the NYSDHR to allege incidents that occurred after he complained were due to retaliation (id. ¶ 5, Ex. B).  The only addition was alleging that Steuben Foods violated discrimination laws in retaliation. He amended the complaint "to allege that the allegations that occurred after I complained were also due to retaliation."  (Id. Ex. B.)  On April 23, 2019, however, Plaintiff moved to dismiss the NYSDHR complaint for administrative convenience for Plaintiff to pursue federal remedies in court, and that request was granted (id. ¶¶ 6, 7, Ex. C).

### 3.  Plaintiff's Complaint and Its Amendment

Plaintiff then filed the original Complaint with this Court (Docket No. 1).  Plaintiff sued Defendants on September 4, 2019 (Docket No. 1), alleging seven causes of action, including Steuben Foods violated Labor Law § 740 (Docket No. 1, Compl. ¶¶ 121-22). There, Plaintiff detailed examples when he detected and warned of introduction of contaminants to the production line and Steuben Foods' management failed to act on Plaintiff's warnings (id. ¶¶ 45-48, 49-52, 64-66, 67-74; see also Docket No. 19, Am.

Compl. ¶¶ 45-47, 49-51, 63-65, 66-72), with one incident involving the use of a racial slur after his warning of peroxide contamination (Docket No. 1, Compl. ¶¶ 67-74; see also Docket No. 19, Am. Compl. ¶¶ 66-72).

Defendants moved to dismiss (Docket No. 13) the original Complaint.   Plaintiff responded (Docket No. 20) as he filed the present Amended Complaint (Docket No. 19). He filed his timely Amended Complaint (Docket No. 19) as a matter of course, see Fed. R. Civ. P. 15(a)(1)(B) (21 days to serve amendment as matter of course from filing of Rule 12(b) motion).   This Court later deemed the Motion to Dismiss moot because the Amended Complaint superseded the original pleading (Docket No. 22, Order of Jan. 3, 2020, citing Shields v. Citytrust Bancorp. Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

The Amended Complaint alleges only six causes of action, deleting the Seventh Cause of Action under New York Labor Law § 740 (see also Docket No. 21, Defs. Memo. at 4) and repeating the remaining original causes of action.   The First Cause of Action alleges Title VII violation by Steuben Foods (Docket No. 19, Am. Compl. ¶¶ 93-94).   The Second Cause of Action asserts that Steuben Foods retaliated against Plaintiff in violation of Title VII (id. ¶¶ 96-97).   The Third Cause of Action alleges all Defendants retaliated against Plaintiff in violation of § 1981 (id. ¶¶ 99-106).   The Fourth and Fifth Causes of Action allege violations of New York Human Rights Law by all Defendants, with the Fourth Cause of Action alleges discrimination in violation of the Human Rights Law (id. ¶¶ 111-13) and the Fifth Cause of Action asserts Defendants aided and abetted an unlawful discriminatory practice, in violation of the Human Rights Law, N.Y. Exec. L. § 296(6) (id. ¶¶ 118-19).   The Sixth Cause of Action alleges retaliation by all Defendants under the Human Rights Law in violation of Executive Law § 296(7) (id. ¶¶ 118-19).

B.  Motion to Dismiss Amended Complaint (Docket No. 21)

On January 2, 2020, Defendants moved to dismiss the Amended Complaint (Docket No. 21)[6].  Responses to this motion was due by January 16, 2020, and any reply was due by January 23, 2020 (Docket No. 22).  This Court determined that oral argument was not necessary, and the motion was deemed submitted upon submission of Defendants' reply papers (Docket Nos. 24, 25).

### III.    Discussion

A.  Applicable Standards

1.  Motion to Dismiss

Defendants have moved to dismiss on the grounds that the Amended Complaint fails to state a claim for which relief cannot be granted (Docket No. 21).  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46); Hicks v. Association of Am. Med. Colleges, No. 07-00123, 2007 U.S. Dist. LEXIS 39163, at *4 (D.D.C. May 31, 2007).

---

[6]In support of their current motion, Defendants submitted their attorney's Declaration, with exhibits; their Memorandum of Law, Docket No. 21.

In opposition, Plaintiff submitted his Memorandum of Law, Docket No. 23.

Defendants replied with their Reply Memorandum, Docket No. 24, and defense counsel's Reply Declaration with exhibits (the legislative history of the amendment to New York Labor Law § 740(7), Docket No. 25, Defs. Atty. Reply Decl. ¶ 3, Ex. A), Docket No. 25.

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'  Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.  Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985); see Colquitt, 2010 WL 3943734, at *1 n.2.  Incorporation of extra-pleading documents is at issue here and will be addressed below.

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint.  Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

2.   Title VII

This Court recently addressed the standards for employment discrimination and civil rights claims in <u>Black v. Buffalo Meat Service, Inc.</u>, No. 15CV49, 2021 WL 2043006, at *10-11 (W.D.N.Y. May 21, 2021) (Skretny, J.).  Plaintiff establishes discrimination either by direct evidence, <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d. 523 (1985); <u>Teamsters v. United States</u>, 431 U.S. 324, 358 n.44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), or by the burden shifting analysis from <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). For direct evidence of discrimination, Plaintiff must meet his "initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act," <u>Teamsters</u>, <u>supra</u>, 431 U.S. at 358.

Where there is insufficient direct evidence of discrimination, under <u>McDonnell Douglas</u>, Plaintiff bears the burden of demonstrating that race was a motivating factor in his adverse employment action, <u>McDonnell Douglas</u>, <u>supra</u>, 411 U.S. at 802-04.  He then must prove that an inference of discrimination where direct evidence is lacking leading to an application of the burden of proof shifting standard of <u>McDonnell Douglas</u>.  Under that standard, Plaintiff bears the burden of establishing a <u>prima facie</u> case of discrimination, <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); <u>McDonnell Douglas</u>, <u>supra</u>, 411 U.S. at 802, by a preponderance of the evidence, <u>Burdine</u>, <u>supra</u>, 450 U.S. at 252-53.  "The burden of establishing a <u>prima facie</u> case of disparate treatment is not onerous," <u>id.</u> at 253, basically that Plaintiff applied for a position or is employed in a job he was qualified for but was rejected or otherwise hindered under circumstances that give rise to an inference of unlawful discrimination, <u>id.</u>

The prima facie case creates a presumption of unlawful discrimination by the Defendant employer, id.

If Plaintiff meets this initial burden, the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for its action, id. at 254-56.  If that has been met, the burden shifts back to Plaintiff to show, beyond the prima facie case, that Defendant's determination was the result of discrimination, id. at 256; see McDonnell Douglas, supra, 411 U.S. at 804-05.  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," Burdine, supra, 450 U.S. at 253.  As noted by the Burdine Court, the McDonnell Douglas evidentiary burden shifting "serves to bring the litigants and the court expeditiously and fairly to this ultimate question," id., or as later held in the TWA case, "that the 'plaintiff [has] his [or her] day in court despite the unavailability of direct evidence,'" TWA, supra, 469 U.S. at 121 (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir. 1979)) (alterations added).

For a Title VII claim, Plaintiff must file charges with the state equal employment agency within 300 days of the alleged discriminatory acts, 42 U.S.C. § 2000e-5(e)(1); Flaherty v. Metromail Corp., 235 F.3d 133, 136 n.1 (2d Cir. 2000).

An exception to this limitations period is where a Plaintiff alleges continuing violation.  A continuing violation exception "'extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations,'" Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998) (quoting Annis v. County of Westchester, 136 F.3d 239, 246 (2d Cir. 1998), emphasis added, internal quotation

marks, citation, and bracketing omitted).   The Second Circuit observed in Quinn that "Continuing violation may be found 'where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'   Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)," Quinn, supra, 159 F.3d at 766.   The court then held that the incidents alleged there were not continuous in time with one another or with alleged timely acts, id.

A party claiming continuous violation to reach earlier incidents needs to allege both a policy or practice which caused the discrimination, Perry v. Slensby, No. 16CV8947, 2018 WL 1136922, at *3 (S.D.N.Y. Feb. 28, 2018), including related, unremedied incidents, Quinn, supra, 159 F.3d at 766; Cornwell, supra, 23 F.3d at 704, and the timely claims are continuous with the otherwise untimely claims, Perry, supra, 2018 WL 1136922, at *3.   (Docket No. 21, Def. Memo. at 7.)

The prerequisite to filing the Title VII action is filing a timely administrative charge (either with EEOC or, in New York, with the NYSDHR) and the agency issuing a Notice of Right to Sue at the completion of its investigation and proceedings, 42 U.S.C. § 2000e-5(e) (timely charge), (f)(1) (right-to-sue notice); Legnani v. Alitalia Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001); McPherson v. New York City Dep't of Educ., 457 F.3d 211, 213-14 (2d Cir. 2003) (receipt of Right to Sue letter is prerequisite to Title VII suit) (Docket No. 21, Defs. Memo. at 10).   Plaintiff needs dismissal of the administrative charge (or failure to act) before filing suit, McPherson, supra, 457 F.3d at 213; see Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003) (exhaustion is precondition to filing a Title VII action).   Absent exhaustion, the subsequent Title VII action must be dismissed, Butts v.

City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993); see Criales v. American Airlines, Inc., 105 F.3d 93, 95 (2d Cir. 1997) (Docket No. 21, Defs. Memo. at 10).  The purpose for exhaustion is to "give the administrative agency the opportunity to investigate, mediate, and take remedial action," Stewart v. United States Immigration & Naturalization Serv., 762 F.2d 193, 198 (2d Cir. 1985) (id. at 10-11).

Claims not asserted before the agency, however, may be pursued in a subsequent action if these claims "are 'reasonably related' to those that were filed with the agency," Shah v. N.Y. Dep't of Civil Serv., 168 F.3d 610, 614 (2d Cir. 1999); Legnani, supra, 274 F.3d at 686 (see Docket No. 23, Pl. Memo. at 14; Docket No. 21, Defs. Memo. at 11). Courts recognize three situations of reasonably related claims, retaliation by the employer for the employee filing the discrimination charge, Shah, supra, 168 F.3d at 614; Legnani, supra, 274 F.3d at 686; conduct that would fall within scope of agency investigation which can reasonably be expected to grow out of the charge of discrimination; or allegations of further incidents of discrimination "carried out in precisely the same manner alleged in the EEOC charge," Junior v. Erie County Med. Ctr. Corp., No. 18CV1014, 2019 WL 4279949, at *4 (W.D.N.Y. Aug. 19, 2019) (McCarthy, Mag. J.) (Report & Rec.) (Docket No. 21, Defs. Memo. at 11).  "The central question is whether the complaint filed with the EEOC gave that agency adequate notice," Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (internal citations and quotation marks omitted); Hunt v. Con Edison Co. N.Y.C., No. 16CV677, 2018 WL 3093970, at *5 (E.D.N.Y. June 22, 2018).  Courts look to the allegations made in the administrative charge or complaint describing the conduct to determine whether the claims not alleged in the charge or complaint are reasonably

related, <u>Hunt</u>, <u>supra</u>, 2018WL 3093970, at *5 (quoting <u>Littlejohn v. City of N.Y.</u>, 795 F.3d 297, 322 (2d Cir. 2015) (internal quotation omitted)).

### 3.  42 U.S.C. § 1981

Section 1981 of Title 42 of the United States Code provides that

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property <u>as is enjoyed by white citizens</u>, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other,"

42 U.S.C. § 1981(a) (emphasis added).  Making and enforcing contracts in this act "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," <u>id.</u>, § 1981(b).

"To establish a claim under 42 U.S.C. § 1981, a plaintiff must allege sufficient facts to support the following elements:  (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (in this case, the making and enforcing of contracts). <u>See</u> <u>Mian v. Donaldson, Lufkin & Jenrette Securities Corp.</u>, 7 F.3d 1085, 1087 (2d Cir.1993)," <u>Watson v. Dominican College</u>, 75 F. Supp. 2d 222, 224 (S.D.N.Y. 1999) (Parker, J.). <u>Black</u>, <u>supra</u>, 2021 WL 2043006, at *13.

Claims under this section has a four-year statute of limitations under the catchall statute of limitations, 28 U.S.C. § 1658 as amended in 1990, <u>Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369, 371, 382-83, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) (Docket No. 21, Defs. Memo. at 6).

4.   New York State Human Rights Law

New York State Human Rights Law also has the same burden of proof and burden shifting from <u>McDonnell Douglas</u> stated above for Title VII claims, <u>Cruz</u>, <u>supra</u>, 202 F.3d at 565 n.1; <u>Forrest</u>, <u>supra</u>, 3 N.Y.3d at 310, 786 N.Y.S.2d at 394 (hostile work environment under Human Rights Law); <u>see</u> <u>Black</u>, <u>supra</u>, 2021 WL 2043006, at *13.

Absent tolling for the period between the filing and disposition of an EEOC or NYSDHR charge, <u>e.g.</u>, <u>DeNigris v. New York City Health & Hosps. Corp.</u>, 861 F. Supp.2d 185, 192 (S.D.N.Y. 2012) (adding tolled period to limitations period for actionable claims) (Docket No. 23, Pl. Memo. at 9); <u>but cf.</u> <u>DeJohn v. Wal-Mart Stores East, LLP</u>, No. 5:09CV1315, 2013 WL 1180863, at *4 (N.D.N.Y. Mar. 20, 2013) (no tolling if plaintiff seeks dismissal of claim for administrative convenience); <u>Colpoys v. County of Erie</u>, No. 12CV908, 2013 WL 5437635, at *3 (W.D.N.Y. Sept. 27, 2013) (Skretny, C.J.) (Docket No. 24, Defs. Reply Memo. at 2-3), claims under the Human Rights Law has a three-year statute of limitations, <u>Karam v. County of Rensselaer</u>, No. 13CV1018, 2016 WL 51252, at *3 (N.D.N.Y. Jan. 4, 2016) (Docket No. 21, Defs. Memo. at 6).   Under New York Executive Law § 279(9) where a NYSDHR case is dismissed at Plaintiff's request, "such party's rights to bring such cause of action before a court of appropriate jurisdiction <u>shall be limited by the statute of limitations in effect in such court at the time the complaint was initially filed with the [D]ivision [of Human Rights]</u>." <u>Colpoys</u>, <u>supra</u>, 2013 WL 5437635, at *3 (emphasis added).

5.   New York Labor Law § 740

New York Labor Law § 740 originally barred separate actions by whistleblowers, N.Y. Labor Law §740(7).  Subdivision 7 of the Act said

"Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any collective bargaining agreement or employment contract; except that the institution of an action in remedies available under any other contract, collective bargaining agreement, law, rule, or regulation or under the common law,"

N.Y. Labor Law § 740(7) (2018) (emphasis added).   Mere invocation of the whistleblower claim, even if later abandoned by amended pleading, is enough to trigger the waiver provision, Kramsky v. Chetrit Group, LLC, No. 10 CV 2738, 2010 WL 4628299, at *4 (S.D.N.Y. Nov. 16, 2010); Gaughan v. Nelson, No. 94 Civ. 3859, 1997 WL 80549, at *2 (S.D.N.Y. Feb. 26, 1997) (filing of Amended Complaint does not change fact plaintiff "institute[ed]" a claim under Labor Law § 740(7)).   Courts have noted that the breadth of this waiver provision is "extraordinary," Kramsky, supra, 2010 WL 4628299, at *3; Reddington v. Staten Is. Univ. Hosp., 11 N.Y.3d 80, 862 N.Y.S.2d 842 (2008), that mere instituting of a whistleblower action "without anything more—triggers waiver," Reddington, supra, 11 N.Y.3d at 87, 862 N.Y.S.2d at 847.

The court in Kramsky observed that § 740(7) has two competing interpretations "to harmonize the statute's existing remedies provision while protecting health and safety whistleblowing by employees, which is the statute's ultimate purpose," 2010 WL 4628299, at *3.   One interpretation looks at the second cause of action to see if it arises from the underlying whistleblowing claim but without defining what is constitutes a different cause of action, id. (citing New York cases).   The other interpretation, applied by federal courts such as Collette v. St. Luke's Roosevelt Hosp., 132 F. Supp.2d 256, 262 (S.D.N.Y. 2001), is narrow application of the waiver provision to "be read to require employees who invoke its protection to waive only other legal rights and remedies that protect against the same wrong that the statue itself prohibits," id. at 267; Kramsky, supra, 2010 WL 4628299, at

*5.  The Second Circuit, as it certified questions under the statute to the New York Court of Appeals, also noted that two clauses in § 740(7) "would seem potentially to contradict each other—the first assuring that '[n]othing in this section shall be deemed to diminish the rights . . . or remedies of any employee under any other law' and the second excepting that 'the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other . . . law,'" <u>Reddington v. Staten Is. Univ. Hosp.</u>, 511 F.3d 126, 134 (2d Cir. 2007).

On December 20, 2019, the State Legislature amended § 740(7) to eliminate the waiver clause highlighted above, 2019 N.Y. Laws Ch. 684, § 1 (Docket No. 25, Defs. Atty. Reply Decl. Ex. A).  The legislative history for that amendment noted that whistleblowers under the former provision lacked the ability to assert other claims if they brought a whistleblower claim, New York State Assembly, Memorandum in Support of A375 (amendment to eliminate "a disincentive for whistleblowers") (<u>id.</u>).  This amendment was not retroactive (<u>see</u> Docket No. 24, Defs. Reply Memo. at 8 n.1).

### 6.  Supplemental Jurisdiction, 28 U.S.C. § 1367

Subject matter jurisdiction may be raised by the parties or by this Court <u>sua sponte</u>, <u>Lyndonville Sav. Bank & Trust v. Lussier</u>, 211 F.3d 697, 700-01 (2d Cir. 2000); <u>LaChapelle v. Torres</u>, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014).  Plaintiff's New York State Human Rights Law claims share the same nucleus of operative facts for her Title VII and § 1981 claims that this Court can exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, <u>see</u> <u>Klein v. London Star Ltd.</u>, 26 F. Supp. 2d 689, 692 (S.D.N.Y. 1998).  Where this Court has original jurisdiction on any other claim (such

as the federal civil rights statutes), this Court may exercise supplemental jurisdiction over the New York State Human Rights claims.  Black, supra, 2021 WL 2043006, at *14.

      B.  Parties' Contentions

Defendants argue that portions of Plaintiff's claims were untimely under one of three statutes of limitations for his Title VII, § 1981, and New York State Human Rights Law claims (Docket No. 21, Defs. Memo. at 6-10).  Defendants contend that Plaintiff's Title VII claims before April 12, 2017 (more than 300 days before filing his EEOC Charge), his Section 1981 claims before September 4, 2015 (four years), and his Human Rights Law claims before September 4, 2016 (three years) are all time barred (id. at 6-7). Defendants state Plaintiff made only "conclusory" allegations of continuing violations to reach prior allegations and failed to allege a policy or practice beyond discrete actions alleged (id. at 7-8).  They deny that Plaintiff alleges a hostile work environment claim to reach pre-Charge incidents (id. at 13-14).

Defendants recalled the EEOC Charge and New York State Division of Human Rights complaint Plaintiff filed and his request to dismiss the State Division complaint (which was granted) (id. at 3-4).  They argue that Plaintiff now claims incidents, such as the failure to promote, his retaliatory termination, or racial slurs, those were not alleged before the EEOC or the State Division of Human Rights (id. at 12-13, 14, 15-17).

Plaintiff responds that his claims are timely under any statute alleged (Docket No. 23, Pl. Memo. at 7-9).  He points to the toll by his filing of the EEOC Charge and NYSDHR Complaint to the running of the statutes of limitations during the pendency of his administrative proceedings (id. at 9-10).

Next, Plaintiff argues that he asserted a hostile work environment claim by alleging the repeated use of three racial slurs against him (id. at 10-11).  Furthermore, he contends that his otherwise untimely claims relate back to timely claims as part of continuous violation by Defendants (id. at 11-13).  He argues that claims not asserted in his administrative proceedings may still be considered where they are reasonably related to those filed with the agencies (id. at 13-14).

Unlike Title VII, claims under § 1981 and the New York State Human Rights Law have no administrative exhaustion requirement (id. at 17).  Plaintiff concludes that he alleged § 1981 and New York State Human Rights Law claims despite arguments about his Title VII claims (see id.).

Plaintiff next denies waiving any claims by initially asserting a whistleblower claim under New York Labor Law § 740 in the initial Complaint (id. at 18-20).

Defendants reply reasserting that the claims are time barred under the statutes of limitations for Title VII, § 1981, and New York Human Rights Law (Docket No. 24, Defs. Reply Memo. at 1-4).  They repeat that the Title VII claims also should be dismissed on failure to exhaust his administrative remedies (id. at 5-7), denying leniency for proceeding pro se before the agencies while, in fact, he was represented by counsel (id. at 5-6).  Defendants renew their argument that Plaintiff waived his State Human Rights Law claims by initially alleging a whistleblower claim which barred other claims under Labor Law § 740(7) (id. a 7-9).

C.  Timeliness of Title VII Claims

Plaintiff's claims from April 14, 2017 (or 300 days from the date Plaintiff filed the EEOC Charge on February 8, 2018) are timely.  These claims include the repeated slurs

by Eric Peterson that Plaintiff was hired on the mistaken belief that Plaintiff was not a "N____" but was a Native American from April 2017 (see Docket No. 19, Am. Compl. ¶¶ 33-34). Also, possible timely claims are Plaintiff's claims of denial of promotions due to his race and complaints of slurs where he sought promotion from April 14, 2017 (see id. ¶¶ 38-39). He does not specify when he sought promotions. Also timely are the alleged graffiti on Plaintiff's car on June or July 2017 (id. ¶ 52). The alleged claims from the peroxide contamination and slur incident of August 2017 and Plaintiff's termination later that month also are timely (id. ¶ 66-72).

Incidents prior to April 14, 2017, are time barred under Title VII. Thus, Defendants' Motion to Dismiss (Docket No. 21) claims prior to April 14, 2017, is granted but denied for claims arising after April 14, 2017.

One way to deem pre-April 2017 Title VII claims timely is if the alleged conduct was a continuing violation for conduct that occurred during the post-April 2017 period. Plaintiff's allegation that Eric Peterson, from April 2015, said Plaintiff was hired on the mistaken belief that he was an "Indian" and not a "N____" (Docket No. 19, Am. Compl. ¶ 27) coupled with the allegation of Peterson repeating this slur from April 2015 (id. ¶¶ 32-33) with no disciplinary action by Steuben Foods (id. ¶¶ 29-32) constitutes continuous violation that is included with timely incidents to be actionable in this case.

Plaintiff, however, otherwise has failed to establish continuing violation to reach other previous incidents, save the repeated slurs by Eric Peterson that continue before and after April 2017 (id. ¶¶ 27, 33). Plaintiff has not alleged a policy or practice of Steuben Foods. The pre-April 2017 incidents are not continuous in time either with each other or with the timely post-April 2017 incidents, see Quinn, supra, 159 F.3d at 766. He alleges

distinct incidents (Gorski's slur in 2014 and the three-day suspension; denial of promotion in 2015; Eric Peterson's quest for painkillers and his slur in 2016; George Peterson's "monkey" slur later in 2016; and unaddressed contamination in January and February 2017, Docket No. 19, Am. Compl. ¶¶ 21-26, 36-39, 40-41, 42-44, 45-48, 49-51) that are not connected with each other or with the later, timely incidents (such as graffiti on his car or the peroxide contamination incident and termination). Gorski's slur in 2014 might be related to her alleged graffiti in July 2017, but the Complaint fails to allege a connection.

Plaintiff's suggestion of a hostile work environment is of no avail. First, the Amended Complaint does not allege a hostile work environment; the listing of racial incidents alone fails to allege a hostile work environment. Second, even if Plaintiff alleged a hostile work environment, that does not bring unrelated conduct under the continuing violation exception, Karam, supra, 2016 WL 51252, at *4 (Docket No. 21, Def. Memo. at 8); Brennan v. Bally Total Fitness, 153 F. Supp.2d 408, 413 (S.D.N.Y. 2001) ("A claim of hostile work environment does not presuppose a continuing violation").

Eric Peterson's repeated slurs remain actionable under Title VII, but other pre-April 2017 incidents are not. Therefore, Defendant's Motion to Dismiss the Amended Complaint's Title VII claims (Docket No. 21) is granted only for untimely claims.

D. Exhaustion of Title VII Claims

Defendants recounted (without objection) Plaintiff's EEOC Charge and New York State Division of Human Rights proceedings and what Plaintiff alleged (or failed to allege) in those administrative proceedings, concluding that the Amended Complaint asserts incidents not exhausted before the agencies (Docket No. 21, Defs. Memo. at 12-14). Defendants claim Plaintiff only asserted before the agencies the racial slur and three-day

suspension (probably the 2014 incident with Gorski) and his termination and did not allege the intervening events now alleged in the Amended Complaint before this Court (such as the denial of promotion, alleged hostile work environment, being called a "monkey" by the late George Peterson in 2016), and other instances of retaliation (Docket No. 21, Defs. Memo. at 12-15).

Plaintiff makes two arguments to excuse his failure to assert all his claims before the agencies.  First, he claims that he was proceeding pro se in filing the EEOC Charge and the amended NYSDHR complaint (Docket No. 23, Pl. Memo. at 13, 14, 17).  Second, he claims the other claims are reasonably related to the claims he filed (id. at 14). Defendants counter that Plaintiff was represented by counsel before the EEOC and the NYSDHR thus any self-representation excuse should be disregarded (Docket No. 24, Defs. Reply Memo. at 5).

Regarding Plaintiff proceeding pro se, while Plaintiff signed the EEOC Charge (see Docket 21, Defs. Atty. Decl. Ex. A) and amended complaint to the NYSDHR (see id. Ex. B), he was represented by counsel to seek the administrative convenience dismissal of the NYSDHR complaint (id. Decl. ¶ 6), without objection by Plaintiff (see Docket No. 24, Defs. Reply Memo. at 5).  The timing of Plaintiff filing the EEOC charge in February 2018 to its administrative dismissal on May 2019 afforded Plaintiff time for his counsel to consider the allegations raised and, if Plaintiff desired, to amend to allege the incidents not alleged in the Charge.

Applying the first situation of recognized reasonably related claims, Junior, supra, 2019 WL 4279949, at *4; Hunt, supra, 2018 WL 3093970, at *5, Plaintiff's EEOC Charge and amended NYSDHR complaint only allege two incidents (the slur and his suspension

in 2014 and Plaintiff's termination in August 2017) without suggestion that the agencies could anticipate the intervening, so-called reasonably related events not administratively alleged by Plaintiff.  Plaintiff did not suggest that the two stated incidents were examples of misconduct he endured during his tenure at Steuben Foods to open consideration of other, unstated incidents.  While case law in this Circuit differs whether the reasonably related claims must be after those alleged in the agency complaint, see Junior, supra, 2019 WL 4279949, at *4 (cf. Docket No. 21, Defs. Memo. at 16, citing Butts, supra, 196 F.3d at 1401; Townsend v. Exchange Ins. Co., 196 F. Supp.2d 300, 313 (W.D.N.Y. 2002) (Curtin, J.) (it was plaintiff's "duty to include all relevant alleged discriminatory conduct when he filed the EEOC charge"), Plaintiff's purported reasonably related claims here are not anticipated from those alleged before the agencies.  Thus, those claims are not reasonably related to the limited claims filed before the agencies.

On the second situation of acceptable reasonably related claims arising from retaliation, although Plaintiff's amended NYSDHR complaint alleges retaliation (see Docket No. 21, Defs. Atty. Decl. Ex. B), the claims he asserts in the Amended Complaint before this Court predate seeking administrative relief, thus were not in retaliation for Plaintiff filing the EEOC Charge.  These incidents occurred during his tenure at Steuben Foods, and he filed with the EEOC after his termination.

The third situation of reasonably related claims is whether the undisclosed claims are identical in the manner of those asserted to the agencies.  Plaintiff's allegation in the EEOC Charge is the vague statement of a slur followed by a suspension.  The allegations now in the Amended Complaint only have the commonality of racial slurs being used. The promotion allegation in the Amended Complaint does not allege following the pattern

of racial epithet or even expressly allege the denial was due to his race.  The claims alleged in the Amended Complaint are distinct from those asserted in the EEOC Charge to preclude making the former reasonably related to the claims before the agencies.

The purpose of the administrative exhaustion is to allow the agencies to investigate, possibly resolve the discrimination claims, and avoid litigation, Stewart, supra, 762 F.2d at 198.  Failing to mention incidents Plaintiff was aware of deprives the agencies of the opportunity to investigate and resolve them before Plaintiff files suit.  The undisclosed claims therefore are not exhausted and are not related to claims raised in the EEOC Charge and NYSDHR complaint.   Thus, Defendants' Motion to Dismiss the unexhausted Title VII claims in the Amended Complaint (Docket No. 21) is granted.

Unexhausted claims for Eric Peterson's slurs (although timely) were not raised before the agencies and are not related to Gorski's 2014 racial epithet beyond both using the same slur.

Gorski's alleged vandalizing Plaintiff's car in June or July 2017 while also timely was unexhausted and not reasonably related to claims alleged before the agencies.  The initial Charge mentions the slur allegedly by Gorski, but it does not name her or said when it occurred; from the Amended Complaint, this Court surmised that the 2014 incident with Gorski was being referenced.   Plaintiff has not alleged that the 2014 epithet and suspension and the 2017 vandalism were related.

Therefore, with the pre-April 2017 Title VII claims and the unexhausted claims dismissed, what Title VII claims remain is the peroxide contamination incident and Plaintiff's subsequent termination in August 2017.  The termination was alleged before the EEOC and the amendment to the NYSDHR asserted that the initial allegations

(including his termination) were in retaliation (Docket No. 21, Defs. Atty. Decl. Exs. A, B). This suffices to exhaust his retaliatory termination claim.

E.  Timeliness of Plaintiff's Section 1981 and Human Rights Claims

Plaintiff alleges claims under § 1981 and New York State Human Rights Law with different limitations periods and lack exhaustion requirements.  Thus, incidents that are barred by Title VII's statute of limitations or exhaustion requirement may be actionable under § 1981 or the Human Rights Law.

1.  Section 1981

Section 1981 has a four-year limitations period from when the Complaint was filed, 28 U.S.C. § 1658; Jones v. R.R. Donnelley, supra, 541 U.S. at 382-83.  Here, the original Complaint was served on September 4, 2019 (Docket No. 1), thus Plaintiff's § 1981 claims are timely from September 4, 2015 (see Docket No. 23, Pl. Memo. at 7-9).  Thus, Plaintiff's claims from the denied promotion in May 2015 (Docket No. 19, Am. Compl. ¶¶ 36-39), and thereafter, are timely under § 1981.  Defendant has not argued that Plaintiff has not stated a § 1981 claim (despite objections to the allegations of creation of a hostile work environment) or that this section requires exhaustion before the EEOC or NYSDHR.

2.  New York State Human Rights Law

Defendant also makes timeliness arguments on Plaintiff's Human Rights Law claims (Docket No. 21, Def. Memo. at 6-7, 10).  The New York State Human Rights Law has three-year statute of limitations, Karam, supra, 2016 WL 51252, at *3.  As the parties acknowledge (Docket No. 24, Defs. Reply Memo. at 2-3; Docket No. 23, Pl. Memo. at 9), this period may be tolled during the pendency of an administrative charge, provided

Plaintiff has not sought its dismissal for administrative convenience, <u>Colpoys</u>, <u>supra</u>, 2013 WL 5437635.

According to the procedural history of Plaintiff's EEOC Charge after its transfer to the NYSDHR, Plaintiff moved to withdraw his now amended NYSDHR complaint for administrative convenience.  Under New York Executive Law § 279(9), Plaintiff's claim is not tolled and is governed by the statute of limitations for New York State Human Rights Law violations, <u>id.</u>, 2013 WL 5437635, at *3; N.Y. Exec. L. § 279(9).

Therefore, Plaintiff's state law claims from September 4, 2016, are timely (<u>cf.</u> Docket No. 23, Pl. Memo. at 7-9) but are not tolled for the period when he had a complaint awaiting NYSDHR action.  Reviewing the Amended Complaint, the only timely state law claim here arises from the January and February 2017 contamination (Docket No. 19, Am. Compl. ¶¶ 45-48, 49-51).

Defendant's present objection is only to the timeliness of the claims; Defendant has not argued that the contamination claims (for example) failed to state discrimination claims under the New York State Human Rights Law.

Claims that are time barred under § 1981 or New York State Human Rights Law are Gorski's alleged slur and Plaintiff's three-day suspension essentially for complaining about the slur in September or October 2014.  Eric Peterson's initial slur starting in April 2015 is the start of continuous conduct as he repeated the slur in the limitation periods for either statute.  Claims from subsequent incidents, such as the alleged defacing of Plaintiff's car in June or July 2017, the peroxide contamination and use of racial epithet in August 2017, and Plaintiff's subsequent discharge, are timely under either statute.  As just noted, incidents between September 2016 and September 2017 are timely under

§ 1981 but not under New York State Human Rights Law (namely Eric Peterson's slur after Plaintiff rejected his request for painkillers in April 2016 and the late George Peterson's "monkey" slur from August 2016).

Therefore, Defendant's Motion to Dismiss (Docket No. 21) the § 1981 and New York State Human Rights Law claims in Amended Complaint for timeliness is granted in part (for claims that precede the respective limitation periods) and denied in part (for remaining claims deemed to be timely under the relevant statute).

What remains are whether this Court should exercise its supplemental jurisdiction to consider Plaintiff's state law claims and whether Plaintiff is barred by waiver under Labor Law § 740 from pursuing the New York State Human Rights Law claims.

F.  New York State Human Rights Law Claim and Supplemental Jurisdiction

With the finding above that Plaintiff alleges claims under this Court's original federal jurisdiction, this Court must consider whether it has jurisdiction over state law claims.   Plaintiff asserts parallel New York State Human Rights Law violations for discrimination, aiding and abetting discrimination, and retaliation arising from the same facts as alleged in his federal claims.   This Court will exercise its discretion and supplemental jurisdiction to consider Plaintiff's Fourth, Fifth, and Sixth Causes of Action.

Next is Defendants' contention that Plaintiff's prior assertion of Labor Law § 740(7) whistleblower claim waived his state law claims stated in the Fourth through Sixth Causes of Action.

G.  Labor Law 740 Waiver

The parties dispute whether the waiver that was once in New York Labor Law § 740 precludes Plaintiff's New York State Human Rights Law claims.   Plaintiff argues

that state and federal cases interpreting § 740(7) prior to its amendment read it narrowly to waive only claims related to the whistleblowing (Docket No. 23, Pl. Memo. at 18-20, citing cases, for example, Collette, supra, 132 F. Supp.2d at 274 (S.D.N.Y. 2001)). Defendants cite to later cases which applied the waiver to any claims the whistleblower raised with the whistleblowing claim (Docket No. 21, Defs. Memo. at 18-19, citing, Lomonoco v. St. Anne Inst., No. 1:15CV1163, 2018 WL 2324051, at *13 (N.D.N.Y. May 22, 2018) (quoting Gaughan v. Nelson, No. 94 Civ. 3859, 1995 WL 575316, at *6 (S.D.N.Y. Sept. 29, 1995)).   Waiver bars claims arising out of the same retaliatory personnel action (Docket No. 21, Defs. Memo. at 17-18), Lomonoco, supra, 2018 WL 2324051, at *13.   The "entire point of" the former waiver provision was to "prevent duplicative recovery," Reddington v. Staten Is. Univ. Hosp., 11 N.Y.3d 80, 89, 862 N.Y.S.2d 842 (2008).

Prior to the December 2019 amendment to the Labor Law, § 740(7) gave a whistleblower a Hobson's choice—inform on employer's misdeeds but forgo right to assert other claims.   The State Legislature recognized this by eliminating "a self-contradictory provision . . . which purports not to diminish the rights of a whistleblowers but then days that they cannot assert any other claims if they bring a whistleblower claim, thus diminishing the rights of whistleblowers in comparison to the other citizens," New York State Assembly, Memorandum in Support of A375 (Docket No. 25, Defs. Atty. Reply Decl. Ex. A).   The Legislature also observed that the prior version of the Act is "contrary to the ordinary role of law that a litigant should bring all claims in one action in one forum. Thus, by requiring a litigant not do so, and to act against normal practice, the existing

provision is a trap for the unwary" as well as "counter-intuitive," id. (id.; Docket No. 24, Defs. Reply Memo. at 8).

This waiver provision, however, was amended by the State Legislature.   The amendment to Labor Law § 740(7), effective when enacted on December 20, 2019, 2019 N.Y. Laws Ch. 684, § 2, and had no retroactive effect to sustain Plaintiff's claims here.   Plaintiff amended his Complaint on December 16, 2019 (Docket No. 19, Am. Compl.), days before the amendment to § 740(7).

The First Department in Demir v. Sandoz Inc., 155 A.D.3d 464, 65 N.Y.S.3d 9 (1st Dep't 2017), held that the trial court correctly concluded that Labor Law § 740(7)'s election of remedies provision

> "does not waive plaintiff's claim of discrimination under the New York State Human Rights Law . . . (Executive Law § 296) because, in alleging discrimination on account of plaintiff's gender, national origin, and religion, plaintiff does not seek the same rights and remedies as she does in connection with her whistleblowing claim, notwithstanding that both claims allege that she was wrongfully terminated,"

155 A.D.3d at 466, 65 N.Y.S.3d at 12 (emphasis added).   There, Ada Demir alleged that Sandoz Inc. did not comply with Food and Drug Administration requirements and that Sandoz discriminated against her based on her gender, national origin, and religion, id., 155 A.D.3d at 465, 65 N.Y.S.3d at 12.   For both claims, Demir contended that she was wrongfully terminated on alternative grounds of whistleblowing and employment discrimination, id., 155 A.D.3d at 466, 65 N.Y.S.3d at 12.   Therefore, the claims that are waived under § 740(7) must arise from the same rights and remedies as the whistleblower complaint.

Here, Plaintiff's whistleblower complaint was about unaddressed warnings about contamination in Steuben Foods' products (Docket No. 1, Compl. ¶¶ 64-75, 121-22),

some of his complaints were disregarded with racial epithets (id. ¶¶ 72-74).  The original whistleblower Seventh Cause of Action was distinct from the other claims regarding racial discrimination.  That cause of action (id. ¶ 122) alleged retaliation and Plaintiff's alleged Material Facts alleged that he was terminated days after the peroxide contamination incident and his race (id. ¶ 75).  These claims are distinct.  He alleges the whistleblowing retaliation was for disregard of potential contamination of food products.  Alternatively, he alleges that he was termination based upon his race.  (Docket No. 1, Compl. ¶ 75; Docket No. 19, Am. Compl. ¶ 73).

This is distinguishable from Lomonoco.  There, plaintiff Teri Lomonoco claimed violation of federal and state age discrimination laws because she was a 59-year-old special education teacher reassigned to clerical duties with her class reassigned to allegedly younger teachers.  Lomonoco also claimed defendant Saint Anne Institute engaged in retaliation in violation of Labor Law § 740 based upon stripping her of her duties and removing her from her classroom in response to her reporting to state authorities alleged mistreatment of students.  2018 WL 2324051, at *1.  The Northern District of New York, in granting Saint Anne Institute's motion for summary judgment, found that "Plaintiff's retaliation and age discrimination claims are both premised on the same adverse action, namely, the change in her job responsibilities for the 2014-2015 school year," id. at *14.  Saint Anne Institute had sufficiently shown that the age discrimination claim was "inextricably arising out of the course of conduct supporting" the whistleblowing retaliation claim "in that they are both premised in large part on the change in Plaintiff's position for the 2014-2015 school year," hence § 740(7) waiver covered the New York State Human Rights Law age discrimination claim, id.

Mills' alleged retaliation, however, was for complaining about possible contamination and not directly related to racial discrimination.

This also differs from <u>Gaughan</u>, <u>supra</u>, 1995 WL 575316, at *1-2, where plaintiff Daniel Gaughan, a senior male employee, complained that his new female supervisor was attempting to remove experienced male employees and defendants retaliated and discriminated against him for complaining. The Southern District of New York dismissed Gaughan's fifth cause of action against defendant Metro-North for intentional infliction of emotional distress because his discrimination and retaliation claims were held to be "inextricably arising out of the course of conduct supporting Plaintiff's § 740 claim," with the court also dismissing claims against the individual defendants on the same grounds, <u>id.</u> at *6. The court, however, dismissed Gaughan's second cause of action for discrimination and retaliation against Metro-North and the individual defendants, finding those claims were inextricably arising out of the whistleblower claims, <u>id.</u> As for Gaughan's third cause of action for violation of Executive Law § 296(7) against the individual defendants, the Court dismissed that claim as well because the employees' liability could affect the employer, Metro-North, <u>id.</u> at *7. The court concluded that Gaughan's sex discrimination claims were distinct from retaliation after his complaints to survive § 740(7) waiver, <u>id.</u>

Thus, the key is whether the former § 740(7) waiver applies is if the discrimination claims are "inextricably" arises out of the whistleblower claim or if the claims were independent of each other, <u>see id.</u> at *6. Plaintiff here alleges an overlap between those two claims—he alternatively alleges whistleblower and racial reasons for his termination (Docket No. 1, Compl. ¶ 75; Docket No. 19, Am. Compl. ¶ 73) and racial epithet used in

rejecting his peroxide contamination warning (Docket No. 1, Compl. ¶ 72; Docket No. 19, Am. Compl. ¶ 70)—but the claims are distinct and do not inextricably arose from the whistleblowing for the disregarded contamination warning.   Unlike <u>Lomonoco</u> or <u>Gaughan</u>, the alleged discrimination was not the heart of the whistleblowing.   Plaintiff alleged early instances complaining of racial slurs (<u>e.g.</u>, Docket No. 19, Am. Compl. ¶¶ 34, 41) without reference to contamination in the plant.   Plaintiff's whistleblowing for the peroxide contamination (not otherwise time barred) differs from Plaintiff's racial harassment claims.   This is akin to the alternative allegations in <u>Demir</u>, <u>supra</u>, 155 A.D.3d at 466, 65 N.Y.S.2d at 12, that the First Department allowed Plaintiff to allege her discrimination claims despite asserting her whistleblower claim for defendant Sandoz violating Food and Drug Administration standards.   As in <u>Demir</u>, <u>supra</u>, Mills is not seeking the same rights and remedies for the whistleblowing and discrimination claims, despite alleging in the alternative that the terminations in both cases were for multiple or alternative reasons.

Labor Law § 740 is entitled "retaliatory personnel action by employers; prohibition," N.Y. Labor L. § 740.   This statute distinguishes the employer, here Steuben Foods, from its management officials and employees, <u>see id.</u> § 740(1)(b) (defining "employer to mean "any person, firm, partnership, institution, corporation, or association that employs one or more employees"); <u>see Gaughan</u>, <u>supra</u>, 1995 WL 575316, at *6 (§ 740 distinguishes between employer and supervisors and only prohibits employer retaliation); <u>see also Ruiz v. Lenox Hill Hosp.</u>, 146 A.D.3d 605, 45 N.Y.S.3d 427 (1st Dep't 2017) (chair of hospital surgery department, in his individual capacity, was not an "employer" under Labor Law § 740).   This section bars the employer from taking retaliatory action, N.Y. Labor L.

§ 740(2); Gaughan, supra, 1995 WL 575316, at *6.  Whistleblowing that is actionable under that section only applies if the employee first brings the violation to the attention of "a supervisor of the employer and afforded such employer a reasonable opportunity to correct such activity, policy or practice," N.Y. Labor L. § 740(3).  The waiver provision of former § 740(7) "cannot be read to bar claims against other employees and supervisors arising out of conduct which states a cause of action independent of the alleged retaliation," Gaughan, supra, 1995 WL 575316, at *6 (emphasis added), despite the court in Gaughan's application of this principle based upon how dependent a cause of action was to the whistleblowing claim.

Another difference between the whistleblower and discrimination claims is that the latter was also against individual Defendants.  Plaintiff's original whistleblower claim, however, was only against Steuben Foods (Docket No. 1, Compl. ¶¶ 120-22).  Plaintiff asserted his New York State Human Rights Law claims against all Defendants, both in the Amended Complaint (Docket No. 19, Am. Compl. ¶¶ 110-19) and the original pleading (Docket No. 1, Compl. ¶¶ 110-19).  Thus, any waiver would have applied to claims against Steuben Foods.   The pre-amended version of Labor Law § 740 distinguishes the employer from employee, see N.Y. Labor Law § 740(1)(b).  Gaughan differs, however, that court applied the waiver to employee defendants as well as the employer for claims it found were inextricably linked to the whistleblower claims, 1995 WL 575 316, at *6-7 (although the whistleblower claims only applied to the employer).

Mills' claims here are not so linked to require waiver of his New York State Human Rights Law claims under the former provisions of § 740(7) against either Steuben Foods or the individual management Defendants.  His whistleblowing was for not addressing

contamination in production lines not for objecting to racial slurs.  Defendants (Docket No. 21, Defs. Memo. at 17-19; Docket No. 24, Defs. Reply Memo. at 7, 8-9) are not correct that Plaintiff waived his state law claims, such as his Human Rights Law claims, under the former Labor Law § 740(7) by alleging whistleblower claims in the Seventh Cause of Action of the original Complaint.  Thus, Defendants' Motion to Dismiss (Docket No. 21) the Fourth, Fifth, and Sixth Causes of Action of the Amended Complaint is denied on Labor Law § 740 waiver grounds for all Defendants.

## IV.   Conclusion

As for Plaintiff's federal law claims, under Title VII Plaintiff's claims prior to April 2017 are time barred, except alleged repeated slurs by Defendant Eric Peterson which are continuing violations to timely claims from other slurs Peterson made.  Plaintiff's later Title VII claims are not time barred.  Plaintiff's § 1981 claims arising before September 4, 2015 (four years before filing the original Complaint) also are time barred, while those arising thereafter are timely.

Unlike § 1981 claims, Plaintiff needed to exhaust administrative remedies by alleging claims before the agencies to state his Title VII claim for the remaining timely claims.  Plaintiff did not do that with his most of the remaining timely Title VII claims.  The only viable, exhausted Title VII claim is his August 2017 termination and the preceding incident that led to it.

Plaintiff, as a result, alleges federal causes of action under Title VII and § 1981.  Some incidents Plaintiff still has a claim under § 1981 that would be deemed either untimely or unexhausted under Title VII.

This leaves his New York State Human Rights claims.  First, this Court exercises supplemental jurisdiction over these claims.  Those claims arising after September 4, 2015 (the limitations period under New York law), are timely, and may include incidents that neither of the federal statutes cover due to their different limitation periods and not requiring exhaustion of administrative remedies.  Plaintiff has not waived these claims against Steuben Foods or the individual Defendants by alleging a whistleblowing claim against that Defendant in the original Complaint.

The remaining claims under Title VII arise from the August 2017 peroxide contamination warning and Plaintiff's subsequent termination; claims under § 1981 for Eric Peterson's slurs (from April 2015 and continuing through September 2015), the "monkey" slur by the late George Peterson in August 2016 and Steuben Foods' inaction on Plaintiff's complaints, and the peroxide contamination and termination.  Plaintiff's remaining timely claims under New York State Human Rights Law thus include the alleged vandalism of Plaintiff's car by Gorski in June or July 2017 and the peroxide contamination and termination.

Therefore, Defendants' Motion to Dismiss the Amended Complaint (Docket No. 21) is granted in part, denied in part.  Since the Motion did not seek dismissal of all claims, and the claims discussed above survive this motion, Defendants will have to answer those surviving claims.  Following that pleading, this case will be referred to a Magistrate Judge to issue a Case Management Order and other pretrial proceedings.

## V.     Orders

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss the Amended Complaint (Docket No. 21) is GRANTED in part, DENIED in part, as stated above.

FURTHER, Defendants have fourteen (14) days from entry of this Order to answer so much of the Amended Complaint that remains for adjudication.  Upon service and filing of that Answer, this Court will refer this case to a Magistrate Judge for further pretrial proceedings.

SO ORDERED.


Dated:        September 7, 2021
              Buffalo, New York


                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                    United States District Judge