UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RUDOLPH MILLS,

                Plaintiff,

v.

STEUBEN FOODS, INCORPORATED, ERIC PETERSON, individually, ANDREA SCANZUSO, individually, KENNETH STANLEY, individually, JOSEPH RENALDO, individually, JOHN CAVAR, individually, and DEBRA GORSKI, individually,

                Defendants.

**DECLARATION IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION TO EXTEND DEADLINES**

Civil Action No. 19-cv-1178(Sk)(F)

**PETER H. WILTENBURG, ESQ.,** declares the following to be true and correct under penalty of perjury:

1. I am a member of the law firm Bond, Schoeneck & King, PLLC, attorneys for Defendants in this action. I am duly admitted to practice law in the State of New York and the United States District Court for the Western District of New York, and am fully familiar with the facts and circumstances set forth herein.

2. I respectfully submit this declaration in opposition to Plaintiff's amended motion (Dkt. 101), filed today, January 23, 2024, which amended Plaintiff's motion filed on January 22, 2024 (Dkt. 99), which sought an after-the-fact modification of this Court's January 3, 2024 scheduling order (Dkt. 96) setting forth deadlines for responses and replies to Defendants' motion to compel, for contempt, and for sanctions. (Dkt. 95).

3. Earlier today I filed an opposition (Dkt. 100) to Plaintiff's motion to extend deadlines (Dkt. 99). In paragraph 3 of that declaration in opposition to Plaintiff's motion, I stated that Plaintiff's motion falsely indicates that it was made with Defendants' consent. Since I filed

1

that opposition, Plaintiff has filed an amended motion that removes the word "CONSENT" from the title of Mr. Barrett's declaration and states that the word had been left there inadvertently, and that Plaintiff did not mean to claim that the motion was on consent. Dkt. 101 ¶ 7. The remainder of this declaration is identical to the declaration I filed earlier today (Dkt. 100) in opposition to Plaintiff's initial motion to extend deadlines (Dkt. 99).

4. Plaintiff's motion should be denied because he has failed to meet his "heavy burden" to show "excusable neglect" for missing this Court's deadline to respond to Defendants' motion by nearly a week.

5. On January 2, 2024, Defendants filed their motion. Dkt. 95.

6. On January 3, 2024, this Court issued a text order clearly stating that Plaintiff's response was due on January 16, 2024, Defendants' reply was due on January 22, 2024, and Plaintiff's sur-reply was due on January 25, 2024. Dkt. 96.

7. Plaintiff failed to respond to the motion or seek a modification of the scheduling order by his January 16, 2024 deadline.

8. In his motion, Mr. Barrett cites "law firm error," which resulted in mistakenly calendaring the due date for Defendants' reply as the due date for Plaintiff's response, as the reason he missed the deadline. Dkt. 99 at 4. Mr. Barrett also cites his recent "preoccupation" with preparing for a trial that began on January 17, 2024, the day after his deadline. *Id*.

9. "Federal Rule of Civil Procedure 6(b)(1)(B) 'provides that courts may accept late filings from a party 'on motion made after the time has expired if the party failed to act because of excusable neglect.'" *S&R Dev. Ests. LLC v. Town of Greenburgh*, No. 16-CV-8043 (CS), 2017 WL 44854, at *2 (S.D.N.Y. Jan. 4, 2017) (citations omitted). "Four factors are considered in evaluating excusable neglect: '[1] the danger of prejudice to the [non-movant], [2] the length

2

of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.'" *Id*. (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993))).

10. While the Supreme Court in *Pioneer* identified four factors to be considered in the "excusable neglect" analysis, it is well-settled in the Second Circuit that "the *Pioneer* factors are not given equal weight." *S&R Dev.*, 2017 WL 44854, at *2 (citing *In re Quebecor World (USA), Inc.*, No. 15-CV-2112, 2015 WL 4877422, at *1 (S.D.N.Y. Aug. 14, 2015), *appeal dismissed* (2d Cir. Nov. 4, 2015). Instead, "courts 'focus[ ] on the third factor: the reason for the delay, including whether it was within the reasonable control of the movant.'" *Id*. (citing *Silivanch*, 333 F.3d at 366 (internal quotation marks omitted)). "Affording dispositive weight to that factor accords with our precedents, which have described the reason for the delay as the most important *Pioneer* factor." *Alexander v. Saul*, 5 F.4th 139, 149 (2d Cir. 2021) (citing cases). "Indeed, 'we ... have focused on ... the reason for the delay, including whether it was within the reasonable control of the movant' despite 'the existence of the four-factor test in which three of the factors usually weigh in favor of the party seeking the extension.'" *Id*. (citing *Silivanch*, 333 F.3d at 366) (internal quotation marks omitted).

11. In general, "[t]he Second Circuit has 'taken a hard line' in 'addressing when neglect is excusable,'" *S&R Dev.*, 2017 WL 44854, at *2 (citing *Silivanch* at 368), and has "strictly limited what attorney error [can] be considered excusable neglect." *Id*. (citing *In re Johns-Manville Corp.*, No. 04-CV-8001, 2006 WL 1676392, at *2 (S.D.N.Y. June 14, 2006) (collecting cases), *aff'd*, 476 F.3d 118 (2d Cir. 2007)). "[W]here the rule is entirely clear, we

3

17136665.1

continue to expect that a party claiming excusable neglect will, in the ordinary course, lose." *Alexander*, 5 F.4th at 142 (quoting *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 122 (2d Cir. 2005)).

12. "The burden of proving excusable neglect lies with the late-claimant." *Alterescu*, 2022 WL 17540485, at *1 (citing *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005)). It is a "heavy burden." *Id*. at *2.

13. Plaintiff has failed to meet this "heavy burden." Many courts in this Circuit have found that errors similar to the calendaring error that Mr. Barrett cites here are insufficient to show excusable neglect. *See*, *e.g.*, *Doroz v. TECT Utica Corp.*, No. 6:12-CV-391 MAD/ATB, 2013 WL 5786641, at *5 (N.D.N.Y. Oct. 28, 2013):

> [D]efendant proffers that the "mis-calendaring of the due date" was likely the result of counsel having "opened the ECF notification [sent on Thursday, September 13, 2007] on Monday the 17th of September and miscalculated the due date from the 17th." This mistake could have been remedied by a simple look at the docket or the ECF notification's time-stamp. The day has long since arrived whereby an attorney can view a docket in an instant at any time from anywhere, thanks to electronic case filing. With that change has come a lessening of sympathy by the court for docket-related errors. Defendant's failure to timely file the Opposition was not the result of excusable neglect.

(citing *Inst. for Policy Studies v. United States Cent. Intelligence Agency*, 246 F.R.D. 380, 385 (D.D.C.2007)). *See also*, *Hernandez v. Goord*, No. 01-CV-9585, 2014 WL 4058662, at *9 (S.D.N.Y. Aug. 14, 2014) (calendaring mistake not excusable neglect because "there was no ambiguity in determining the date of the [required action,]" given that rule "sets forth a clear and unmistakable deadline"); *Weiming Chen v. Ying-Jeou Ma*, No. 12 Civ. 5232 (NRB), 2014 WL 171172, at *2 (S.D.N.Y. Jan. 10, 2014) ("Here we find that the failure by plaintiff's counsel to both regularly monitor the docket sheet and properly manage his email account is inexcusable

attorney error, the consequences of which must be borne by plaintiff."); *Friedman v. State Univ. of New York at Binghamton*, No. 3:06-CV-0399, 2006 WL 2882980, at *4 (N.D.N.Y. Oct. 5, 2006) (holding that a failure to diligently check the court's docket does not constitute excusable neglect); *Silivanch*, 333 F.3d at 369 (finding that "counsel knew there was a thirty-day limitation, but neglected to consult a calendar to determine when it expired").

14.   Here, Mr. Barrett's cursory declaration provides no facts that would satisfy his heavy burden of showing excusable neglect. Simple failure to accurately read and calendar this Court's text order does not qualify. The fact that Mr. Barrett was preoccupied preparing for a trial that began on January 17, the day after his deadline, provides no reason why he could not at least have requested an extension some time between January 3 and January 16.

15.   Mr. Barrett's conduct also demonstrates a lack of diligence in complying with this Court's deadlines even as he understood them to be: Mr. Barrett waited until the night of January 22, which he believed to be the deadline to file a response to the motion, to even make a motion to the Court seeking an extension, without first seeking consent from Defendants' counsel. This continues Mr. Barrett's and Plaintiff's course of conduct throughout this litigation, in which they have repeatedly ignored Court-ordered deadlines. For example, on January 2, 2024, Mr. Barrett served an expert report and updated Rule 26 disclosure more than 15 months past the scheduling order deadline to do so. He then ignored my emails informing him of this, making a motion to strike and preclude necessary. *See*, Dkt. 97. Plaintiff has now been in violation of this Court's order to pay Defendants expenses under Rule 37(a)(5)(B) for 113 days. *See*, Dkt. 77. His failure to abide by this Order necessitated part of Defendants' January 2, 2024 motion. *See*, Dkt. 95. When Mr. Barrett finally complied with this Court's Order to pay his portion of Defendants' expenses under Rule 37(a)(5)(B), he did so 46 days late. *See*, Dkts. 77, 95-1 ¶ 100.

17136665.1

16. Finally, the schedule of deadlines Mr. Barrett proposes is unreasonable. Without explanation aside from a trial that started on January 17 and continued through January 22 (Dkt. 99 ¶ 4), he requests an additional 30 days from yesterday to prepare his response, even though this Court initially saw fit to schedule the response deadline two weeks after the motion was filed. This schedule would likely delay resolution of Defendants' motion until past the deadlines for dispositive motions in this case, further setting back the resolution of this case which primarily concerns Plaintiff's termination more than 6 and a half years ago.

17. Defendants therefore respectfully request that Plaintiff's motion be denied in its entirety for failure to show excusable neglect, and that this Court decide Defendants' January 2, 2024 motion based solely on Defendants' moving papers.

Dated:     Buffalo, New York
           January 23, 2024

                                                                         /s/ Peter H. Wiltenburg, Esq.
                                                                         PETER H. WILTENBURG

17136665.1