UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RUDOLPH MILLS,

                          Plaintiff,

      v.

STEUBEN FOODS, INCORPORATED,
ERIC PETERSON,
ANDREA SCANZUSO,
KENNETH STANLEY,
JOSEPH RENALDO,
JOHN CAVAR,
DEBRA GORSKI,

                         Defendants.
_____

**DECISION
and
ORDER**

**19-CV-1178WMS(F)**

APPEARANCES:        PHILLIPS & ASSOCIATES, PLLC
                            Attorneys for Plaintiff
                            SEAMUS P. BARRETT, of Counsel
                            45 Broadway, Suite 430
                            New York, New York   10006

                            DEREK SMITH LAW GROUP PLLC
                            Attorneys for Plaintiff
                            ZACHARY HOLZBERG, of Counsel
                            1 Penn Plaza, Suite 4905
                            New York, New York   10119

                            BOND, SCHOENECK & KING, PLLC
                            Attorneys for Defendants
                            ADAM P. MASTROLEO,
                            MARK A. MOLDENHAUER,
                            PETER H. WILTENBURG, of Counsel
                            200 Delaware Avenue, Suite 900
                            Buffalo, New York   14202

      In this action Plaintiff alleges violations of Title VII, U.S.C. 42 § 1981, and New York state law based on racial slurs directed to him by certain individual Defendants while Plaintiff was employed as a Filler Operator by Defendant Steuben Foods,

Incorporated ("Steuben Foods"), a major producer of food products, during the period September 2014 to August 30, 2017 when Plaintiff was terminated.  Plaintiff seeks $15 million in back and front pay, and compensatory and punitive damages.  By order filed September 4, 2021, this case was referred to the undersigned for all non-dispositive matters (Dkt. 28).  By papers filed January 2, 2024, Defendants move to compel (1) complete responses to Defendants' First Set of Interrogatories and Document Requests set forth in Defendants' October 19, 2023 Letter (Dkt. 95-10); (2) complete responses to Defendants' First Set of Requests for Admissions dated November 2, 2023 (Dkt. 95-23); (3) complete responses to Defendants' Second Set of Requests for Documents (Dkt. 95-24); (4) Plaintiff to answer questions regarding his arrest record under oath; (5) Plaintiff to provide effective authorizations to enable Defendants to obtain copies of Plaintiff's federal and New York State tax returns; (6) sanctioning Plaintiff for tampering with a non-party witness who was deposed by Defendants and for Plaintiff's perjury during Plaintiff's deposition; (7) certifying facts to Judge Skretny pursuant to 28 U.S.C. § 636(e)(6)(B)(iii), to hold Plaintiff in contempt for Plaintiff's failure to pay Defendants' expenses of $2,890 awarded by this court's Decision and Order filed July 27, 2023 (Dkt. 70) pursuant to Fed.R.Civ.P. 37(a)(5)(B); (8) sanctions pursuant to Rule 37(c)(5)(A) for Defendants' expenses incurred in connection with Defendants' instant motion; and (9) an amendment to the Sixth Amended Scheduling Order as necessary (Dkt. 95) ("Defendants' Motion to Compel"), together with the Declaration of Peter H. Wiltenburg, Esq. ("Wiltenburg Declaration") (Dkt. 95-1) and a Memorandum Of Law In Support Of Defendants' Motion To Compel, For Sanctions, And For Contempt ("Defendants' Memorandum") (Dkt. 95-32).

On March 11, 2024, Plaintiff filed a Memorandum of Law and Declaration of Seamus Barrett [Esq.][1] In Opposition To Defendants' Motion To Compel ("Plaintiff's Memorandum of Law and Barrett Declaration") (Dkt. 115) together with deposition transcripts of non-party witnesses Nancy Lissner (Dkt. 115-1), Shawn McMindes (Dkt. 115-2), Manea Al-Hajaji (Dkt. 115-3) and Nagi Al-Agi (Dkt. 115-4), and copies of several e-mail exchanges between Plaintiff's and Defendants' counsel. *See* Dkt. 115-5 - Dkt. 115-7. On March 29, 2024, Defendants filed the Reply Declaration of Peter H. Wiltenburg, Esq. (Dkt. 120) ("Wiltenburg Reply Declaration") together with a copy of Plaintiff's Responses To Defendants' First Set of Requests For Admission (Dkt. 120-1) ("Plaintiff's Responses to Defendants' Requests for Admission"). Oral argument was deemed unnecessary.

(1)   <u>Rule 37(a)(1)</u>.

At the outset, the court addresses Plaintiff's opposition to Defendants' Motion to Compel asserting Defendants failed to comply with Fed.R.Civ.P. 37(a)(1)'s ("Rule 37(a)(1)") requirement that a moving party's counsel certify they have made a good faith effort to obtain disputed discovery without court intervention. Barrett Declaration (Dkt. 115) ¶ 2. Specifically, Plaintiff contends Defendants' attorney could have discussed the discovery issues raised by Defendants' motion to compel on numerous occasions prior to filing Defendants' motion but did not. *Id.* ¶¶ 6-9, 44 (citing caselaw), 49. Defendants' rebuttal is based primarily on Defendants' several (five) attempts to obtain the requested discovery from Plaintiff in four e-mails sent to Plaintiff's counsel, Seamus Barrett ("Barrett"), October 3, 2023, December 1, 2023, December 8, 2023, and

---

[1]   Unless indicated otherwise all bracketed material is added.

December 20, 2023 and a comprehensive deficiency letter sent to Plaintiff October 19, 2023 ("the October 19, 2023 Letter").  Dkt. 120 ¶ 3.  For example, Defendants' December 1, 2023 e-mail explained why Plaintiff's objections to Defendants' First Request for Admission were invalid, why Plaintiff's responses to Defendants' October 19, 2023 deficiency letter were incomplete and that Plaintiff's failure to remedy the stated deficiencies would result in a motion to compel.  *See* Dkt. 120 ¶ 3.  Rule 37(a)(1) certification does not require that parties actually physically meet and confer about disputed discovery requests, as e-mail exchanges between counsel "may suffice to satisfy Rule 37(a)(1)."  *Thuman v. Dembski*, 2022 WL 1197551, at *4 (W.D.N.Y. Apr. 22, 2022) (quoting *Ergas v. Eastpoint Recovery Group, Inc.*, 2021 WL 1711321, at *6 (W.D.N.Y. Apr. 30, 2021)).  The court has "'discretion to determine whether the moving party has satisfied Rule 37(a)(1)'s requirements and whether further efforts to comply would be futile.'"  *Id.* (quoting *Ergas*, 2021 WL 1711321, at *6 (citing caselaw)).  Here, Defendants' extensive written communications with Plaintiff before Defendants' motion was filed regarding Plaintiff's discovery deficiencies were notably unproductive as evidenced by the fact that while Plaintiff's attorney, Seamus Barrett ("Barrett"), repeatedly stated he was available to discuss Defendants' discovery issues, *see* Barrett Declaration (Dkt. 115) ¶¶ 2, 3, 10, 49, Barrett fails to explain why he made no apparent effort to respond to any of the four e-mails and the October 19, 2023 deficiency letter Defendants sent to him requesting Plaintiff provide further discovery responses.  Barrett Declaration ¶ 3 (complaining that in lieu of "Defendants' counsel's failure to attempt to initiate a phone call with Plaintiff's counsel to discuss the instant discovery issues, Defendants' counsel advised Plaintiff's counsel that he would be available to discuss

the issues with Plaintiff's attorney by phone").  *See* Dkt. 95-26 (Defendants' December 1, 2023 e-mail explaining why Plaintiff's failure to respond to Defendants' Requests for Admission regarding Plaintiff's criminal conviction record was deficient and Defendants' December 8, 2023 e-mail (Dkt. 95-26 at 1) to Plaintiff informing Plaintiff that unless Plaintiff acceded to Defendants' Requests for Admission by December 12, 2023, Defendants intended to file a motion to compel but informing Plaintiff that Defendants' attorney was available for a phone conference with Plaintiff's counsel until such time). Significantly, Plaintiff does not dispute Defendants' recitation of Defendants' prior communications on October 3, October 19, December 1, December 8, and December 20, 2023 with Plaintiff in which Defendants raised several substantial reasons in support of Defendants' discovery requests at issue, *see* Dkt. 95-9 (requesting documents supporting Plaintiff's assertion that Plaintiff's arrest and conviction records were sealed based on Plaintiff's status as a minor at the time of the offense); Dkt. 95-26 (requesting Plaintiff's answers to Defendants' Request for Admission relating to Plaintiff's arrest and conviction record); Dkt. 95-31 (requesting Plaintiff provide appropriate authorizations for Plaintiff's federal and New York state income tax records) as well as Defendants' October 19, 2023 deficiency letter regarding Plaintiff's worker's compensation records, arrest records, job applications, and emotional distress treatment, nor does Plaintiff even make reference to the communications in Plaintiff's opposition to Plaintiff's motion. In short, the record demonstrates Plaintiff's response to Defendants' motion makes no effort to explain why Plaintiff's counsel repeatedly failed to respond to Defendants' several supplemental discovery requests as well as his failure to contact Defendants' attorney as Defendants' attorney proposed despite Defendants' explicit intention to file

the instant motion as stated in the December 1, 2023 e-mail to Plaintiff.  Thus, while a phone conversation between counsel prior to making the instant motion may conceivably have been productive, given Plaintiff's repeated failure to respond to Defendants' previous written inquiries specifying the discovery sought by Defendants, Defendants' conclusion that further efforts to resolve such issues would have been futile was well-founded.  That Defendants' response to Plaintiff's Rule 37(a)(1) contention was provided in Defendants' Reply (Dkt. 120) does not relieve Plaintiff of the obligation to respond as Plaintiff was given the opportunity to file a sur-reply but did not.  *See* Dkt. 109.  Accordingly, the court finds Defendants complied with Rule 37(a)(1)'s requirement that Defendants engage in good faith effort to avoid motion practice on the issues raised in Defendants' motion, and that Plaintiff's objection to Defendants' motion to compel on this ground is without merit.

(2)      Defendants' Interrogatories and Document Requests.

Defendants' First Set of Interrogatories were served on Plaintiff on January 4, 2022.  Wiltenburg Declaration (Dkt. 95-1) ¶ 6.  Defendants' Interrogatory No. 3 (*see* Dkt. 38-4 at 6) requested Plaintiff provide details regarding all employment applications Plaintiff submitted to prospective employers since January 1, 2017 including the names and addresses of persons with whom Plaintiff communicated regarding such prospective employment, the date of the application, the job title for which Plaintiff applied, approximate salary and benefit information, and whether such applications were successful.  *Id.*  Plaintiff initially identified two entities he had applied to but failed to identify four other entities which Plaintiff had identified in response to Defendants' First Set of Document Requests.  *See* Wiltenburg Declaration, Dkt. 38-1 at 11.

Plaintiff's failure to provide complete answers to Interrogatory No. 3 required

Defendants to move, on September 27, 2022, to compel Plaintiff's further answer which

resulted in this court's Decision and Order of January 13, 2023 granting Defendants'

motion and directing Plaintiff to provide complete answers fully compliant with

Defendants' Interrogatory No. 3.  *See Mills v. Steuben Foods, Incorporated*, 2023 WL

179579, at *1 (W.D.N.Y. January 13, 2023) ("the Jan. 13, 2023 D&O") (citing *Doe 1 v.*

*East Side Club, LLC*, 2021 WL 2709346, at *28 (S.D.N.Y. July 1, 2021) (information

relating to plaintiff's employment history "clearly relevant" to plaintiff's "economic

damages claim")).  Here, as noted, *supra*, at 2, Plaintiff seeks $16 million in back and

front pay and punitive damages, thus supporting Defendants' request for such

information as entirely relevant to Plaintiff's claims.  In response to the court's order, on

March 7, 2023, Plaintiff served supplemental responses revealing that since Plaintiff's

termination by Defendant Steuben Foods on August 30, 2019, Plaintiff also applied for

employment at New York City School Support Services, a company Plaintiff referred to

as Makotek.net, several job opportunities through Indeed.com, an on-line employment

website ("Indeed.com"), which Plaintiff was unable to further identify, and that Plaintiff

had also been employed since May 2022 as a Pepsi/Frito-Lay delivery driver earning

$67,000 per year until Plaintiff suffered a work-related injury in November 2022.

Wiltenburg Declaration (Dkt. 95-1) ¶¶ 11, 12, 13.  Because Plaintiff claimed Indeed.com

advised him that its records are deleted after six months, *see* Dkt. 95-2 at 2,

Defendants' attempted to subpoena Plaintiff's records from Indeed.com; however,

Defendants' effort to subpoena the details of Plaintiff's asserted employment efforts

through Indeed.com was unsuccessful.  *Id.* ¶¶ 14, 17.

Despite the court's direction in the January 13, 2023 D&O that Plaintiff fully comply with Defendants' Interrogatory No. 3, at Plaintiff's September 18, 2023 deposition, Plaintiff further revealed Plaintiff had applied for six additional jobs, during the period August to October 2021, not identified in Plaintiff's prior responses to Interrogatory No. 3, including a meter company based in Texas, a cable company, a printing company, a fueling job at LaGuardia airport, a commissary job, and an unspecified position at JFK airport. *Id.* ¶ 26. Defendants contend Plaintiff should be compelled to fully identify each of these newly asserted prospective employers in order to facilitate Defendants' ability to fully assess whether Plaintiff has properly mitigated his purported back-pay damages as such information is relevant to Plaintiff's claim. Defendants' Memorandum of Law (Dkt. 95-32) at 10. Plaintiff's response to Defendants' motion on this issue is limited to generalized assertions of a lack of relevancy and that Defendants' requests are disproportionate to the needs of the case, as required by Fed.R.Civ.P. 26(b)(1) ("Rule 26(b)(1)"), and that Plaintiff has provided all responsive documents in his possession in response to Defendants' discovery requests, *see* Plaintiff's Memorandum of Law and Declaration of Seamus P. Barrett In Opposition to Defendants' Motion To Compel ("Plaintiff's Memorandum of Law" and "Barrett Declaration") (Dkt. 115) ¶¶ 4, 17, 50-54, 56. In Defendants' Reply (Dkt. 120) at ¶ 19, Defendants argue Plaintiff failed to respond to Defendants' argument ("Plaintiff's opposition does not address this [issue, *i.e.*, Plaintiff's failure to provide complete answers to Defendants' Interrogatory No. 3] at all.").

That Interrogatory No. 3 seeks relevant information is the law of the case. *See Mills*, 2023 WL 179579, at *1 (citing *Doe I*, 2021 WL 2709346, at *28). *See Uttawar v.*

*Lazard Asset Management LLC*, 2024 WL 1500980, at * 4 (S.D.N.Y. Mar. 22, 2024) (considering the court's previous ruling that the plaintiff had flouted his discovery obligation by failing to comply with discovery obligations to be the law of the case). Further, generalized objections to discovery requests are insufficient. *See Guillory v. Skelly*, 2014 WL 4542468, at *8 (W.D.N.Y. Sept. 11, 2014) ("[G]eneral and conclusory objections as to relevance, overbreadth, or burden are insufficient to avoid discovery of the requested information; rather, the objecting party must show, specifically, how, despite broad and liberal construction afforded federal discovery rules, each request is not relevant, or is overly broad, burdensome, or oppressive." (citing *US Bank National Association v. PHL Variable Insurance Co.,* 288 F.R.D. 282, 285 (S.D.N.Y. 2012) (citing Fed.R.Civ.P. 26(b)(2)(C) and cases))). Finally, given Plaintiff's damage demand of $16 million, it can hardly be said that Defendants' Interrogatory No. 3 seeks information disproportional to the needs of the case. *See Lifeguard Licensing Corp. v. Ann Arbor T-shirt Company, LLC*, 2016 WL 5936887, at * 2 (S.D.N.Y. Oct. 11, 2016) (holding discovery relevant to the value of the subject trademark "is relevant to the ultimate determination of damages in this case and that the discovery is proportional in light of the damages that Plaintiffs seek"). As discussed, *see*, *supra*, at 7, a plaintiff's employment history is "clearly relevant" to a plaintiff's "economic damages claim," citing *Doe 1,* 2021 WL 2709346, at *28. Moreover, it is black letter law that a plaintiff's efforts to obtain new employment is relevant to plaintiff's duty to mitigate his damages in a wrongful discharge case. *See Marseet v. Rochester Institute of Technology*, 2023 WL 10979069, at * 9 (W.D.N.Y. Jan. 30, 2023) (concluding the plaintiff's job pursuits post-termination backpay and in mitigation of damages are discoverable (quoting *Michelman*

*v. Ricoh Americas Corp.*, 2013 WL 664893, at *2 (E.D.N.Y. Feb. 22, 2013) (plaintiff's earnings and sources of income are relevant in discrimination cases to plaintiff's "claims for backpay and to mitigation of damages")).  As to Plaintiff's contention, *see* Dkt. 115 ¶ 7, that Defendants' requests do not comply with the proportionality requirement of Rule 26(b)(1), under Rule 26(b)(1) discovery sought by a party must be proportional to the needs of the case and is determined by the court's weighing of six factors:  (1) the importance of the issues at stake in the case, (2) the amount in controversy, (3) the parties' access to relevant information, (4) the parties' resources, (5) the importance of the requested discovery in resolving the issues, and (6) whether the burden or expense of the requested discovery outweighs its likely benefit.  *See* Fed.R.Civ.P. 26(b)(1).  The court has broad discretion in weighing these Rule 26(b)(1) factors, *see ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*, 2021 WL 630910, at * 2 (W.D.N.Y. Feb. 18, 2021) (citing *Woelfle v. Black & Decker (U.S.) Inc.*, 2020 WL 1180749, at *5 (W.D.N.Y. Mar. 12, 2020)), no single factor is determinative, *see Wall v. Reliance Standard Life Insurance Company*, 341 F.R.D. 1, 5 (D.D.C. 2022) (citing *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1,6 (D.D.C. 2017)), and the burden to show a lack of proportionality is on the party seeking to avoid the discovery at issue.  *See Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) (the party resisting discovery has the burden of showing a lack of relevancy or proportionality).  Here, it is clear that Defendants' requests are proportional to the needs of the case.

Plaintiff's $16 million damages claim obliges the Defendants to thoroughly evaluate Plaintiff's mitigation efforts and Plaintiff does not contend otherwise.  Unless

Plaintiff complies with Defendants' requests, Defendants have no alternative way to ascertain the facts regarding the totality of Plaintiff's employment seeking.  Plaintiff is the sole source of such important information.  That Defendants' resources are certainly superior to Plaintiff's is not a factor with much relevance.  Significantly, Plaintiff has failed to make any effort to establish Defendants' lack of compliance with Rule 26(b)(1).  As such, Plaintiff's assertions in support of Plaintiff's failure to comply fully with Interrogatory No. 3 are without merit.  Defendants' motion with respect to Plaintiff's failure to provide complete answers to Interrogatory No. 3 is therefore GRANTED.  Plaintiff shall provide supplemental answers to Defendants' Interrogatory No. 3 consistent with the foregoing within 20 days of this Decision and Order.

With respect to Plaintiff's asserted inability to obtain his individual records from Indeed.com to assist Plaintiff in fully responding to Interrogatory No. 3, Defendants contend Plaintiff is required to obtain all information within his control.  *See* Defendants' Memorandum of Law (Dkt. 95-2) at 2 (citing *Coventry Capital US LLC v. EEA Life Settlements, Inc.*, 333 F.R.D. 60, 64 (S.D.N.Y. 2019)); *Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014) (party may be found to have control of requested documents for purposes of Fed.R.Civ.P. 34(a) if party is legally entitled to documents or has practical ability to acquire documents from a third-party).  In Plaintiff's March 7, 2023 supplemental response to Interrogatory No. 3, Plaintiff asserted he was unable to access such information as Indeed.com removes such data after six months.  *See* Wiltenburg Declaration (Dkt. 95-1) ¶ 12.  Defendants responded by serving a non-party subpoena on Indeed.com but the company objected to the subpoena based on the fact that Defendants' subpoena violated Fed.R.Civ.P. 45(c)(2)A) (document production

subpoena limited to production within 100 miles of subpoenaed party's residence or place of employment). *See* Defendants' Memorandum of Law (Dkt. 95-32) at 8. However, Indeed.com also advised that Plaintiff could obtain the information by submitting a "data request form" as provided in the company Privacy Policy. *See* Dkt. 95-6 (Indeed.com's objections to Defendant's subpoena by letter dated July 14, 2023 from Laura Hansen, Senior Corporate Counsel, Indeed.Inc.) ("the Indeed Letter"). Significantly, contrary to Plaintiff's assertion, the Indeed Letter makes no reference to any company policy under which data received from a user like Plaintiff is deleted after six months. *See* Dkt. 95-6 (*passim*). The Indeed Letter also included a hyperlink for users to obtain access to the Indeed.com's data request form. *See* Dkt. 95-6 at 3.

In response to Defendants' request, on August 4, 2023 and September 7, 2023, for a report from Plaintiff as to the status of Plaintiff's request for Indeed.com's records of Plaintiff's employment application, Plaintiff's counsel, Barrett, by using the hyperlink provided by Indeed.com, e-mailed Plaintiff's request for a copy of Plaintiff's employment applications. *See* Dkt. 115-5 at 1. On behalf of Indeed.com, HR Tech Privacy Center responded to Plaintiff, within approximately 20 minutes, that it was "procuring this user's [Plaintiff] request" and that "the process can take up to a month." *Id.* The record does not indicate whether Defendants were provided with a copy of this response. At Plaintiff's deposition on September 18, 2023, in response to Defendants' question, Plaintiff was indefinite about what exactly happened to Plaintiff's request to HR Tech Privacy Center on behalf of Indeed.com. *See* Wiltenburg Declaration, Dkt. 95-1, ¶ 27 (referencing Plaintiff's deposition testimony at 354-55).[2] In Plaintiff's response to

---

[2]  A copy of Plaintiff's complete deposition testimony is not included in the record.  Defendants only filed excerpts of Plaintiff's deposition.  *See* Defendants' Exhibit 7 (Dkt. 95-8).

Defendants' motion, Plaintiff's counsel states that neither Plaintiff nor Barrett ever received the records requested by Barrett on Plaintiff's behalf. *See* (Dkt. 115) ¶ 85. Based on the record, the court finds, given Plaintiff's obligation, which Plaintiff does not dispute, to provide the requested documents, Plaintiff should have reasonably followed up with HR Tech Privacy Center when the records were not provided within a month as HR Tech Privacy Center represented to Barrett in its September 7, 2023 e-mail. Accordingly, the court directs Plaintiff to immediately communicate with HR Tech Privacy Center using the hyperlink, or by e-mail, to ascertain the status of Plaintiff's record request and report in writing <u>within 45 days</u> in an affidavit HR Tech Privacy Center's response to Defendants and the court. Such report shall include copies of Plaintiff's requests and HR Tech Privacy Center's acknowledgements of Plaintiff's requests, sufficient to verify Plaintiff has in fact effectuated such follow-up requests as directed. If such report is positive, *i.e.*, that a copy of the requested records is forthcoming, Defendants' motion is GRANTED. If the report is negative, *i.e.*, that such report will not be provided or if HR Tech Privacy Center fails to respond to Plaintiff's request within 30 days, then Defendants' motion is DENIED as futile. In the latter event, Defendants may attempt to obtain Plaintiff's records from HR Tech Privacy Center by subpoena pursuant to Fed.R.Civ.P. 45(a)(1).

With respect to Plaintiff's deposition testimony in which Plaintiff asserted six additional jobs Plaintiff had applied for but did not identify in Plaintiff's answers to Interrogatory No. 3, Wiltenburg Declaration (Dkt. 95-1) ¶ 26, Plaintiff's failure to provide reasonable details concerning the identity of these job possibilities, as well as Plaintiff's failure to respond to Defendants' motion on this issue, *see* Wiltenburg Reply Declaration

(Dkt. 120) ¶ 19, require Plaintiff to provide such information in a Supplemental Interrogatory Answer.  Defendants' motion is therefore GRANTED as to this issue and Plaintiff shall provide the required additional information with respect to the six identified job opportunities <u>within</u> <u>20</u> <u>days</u> of this Decision and Order.

(3)     <u>Defendants' Interrogatory No. 13 and Defendants' Document Request No. 15 Requesting Plaintiff's Workers' Compensation Information</u>.

Defendants' Interrogatory No. 13 requested Plaintiff provide the amounts, dates, and duration of any Workers' Compensation Benefits Plaintiff received during the relevant period; Defendants' Document Request No. 15 requested Plaintiff provide copies of all documents in Plaintiff's possession pertaining to such benefits.  *See* Wiltenburg Declaration (Dkt. 95-1) ¶ 40.  Plaintiff's answer indicated Plaintiff had received Workers' Compensation Benefits "every two weeks in 2019."  *Id.* ¶ 40. However, Plaintiff's responsive document production also indicated Plaintiff received such benefits between at least December 3, 2018 until February 22, 2021.  *Id.*  In Defendants' October 19, 2023 Deficiency Letter to Plaintiff, Defendants pointed out to Plaintiff these discrepancies in Plaintiff's answers to Interrogatory No. 13 including Plaintiff's failures to provide a supplemental response to account for Plaintiff's benefits related to Plaintiff's November 2022 work-related injury incurred while employed as a truck driver for Pepsi/Frito-Lay.  *Id.* ¶ 41.  Plaintiff further testified at his September 18, 2023 deposition that he also received Workers' Compensation Benefits in connection with his November 2022 accident but that these benefits were terminated in June 2023. Wiltenburg Declaration (Dkt. 95-1) ¶¶ 40, 41.  Plaintiff has so far failed to provide complete records covering these benefits and such information is relevant to Plaintiff's ability to work since being terminated by Defendant Steuben.  *See* Defendants'

Memorandum of Law (Dkt. 95-32) at 8.  The October 19, 2023 Deficiency Letter accordingly requested Plaintiff execute and return to Defendants a release which would enable Defendants to obtain complete copies of all such records.  *See* Dkt. 95-10 at 2. Other than an assertion that had Defendants' counsel engaged in a meet and confer pursuant to Rule 37(a)(1) with respect to the issue of obtaining a release and authorization for Defendants to obtain copies of Plaintiff's complete Workers' Compensation Benefits record had such conference taken place, the parties would have "potentially reached an agreement" on such request, Plaintiff does not oppose Defendants' motion on this issue.  *See* Barrett Declaration (Dkt. 115) at 15.

Accordingly, Defendants motion on this matter is GRANTED and Plaintiff shall provide to Defendants a fully executed release and authorization form to be provided to Plaintiff by Defendants to enable Defendants to obtain a complete copy of Plaintiff's New York Workers' Compensation Benefits as relevant to Plaintiff's claim within 20 days of this Decision and Order.

(4)     Defendants' Request for HIPAA Authorizations.

In the Amended Complaint, Plaintiff alleged that he was "hospitalized on multiple occasions" as a result of Defendants' discriminatory misconduct.  Amended Complaint, (Dkt. 19) ¶ 77.  At his September 18, 2023 deposition, Plaintiff testified he was treated for various ailments caused by Defendants' discriminatory conduct (1) at an unidentified hospital in Buffalo for excessive weight gain and depression, (2) by a physician where he was sent for a follow-up to the hospital's treatment, and (3) a dietician located in Buffalo, New York.  Plaintiff further testified that Defendant Eric Peterson demanded pain medication from Plaintiff on two occasions causing Defendants to demand in the

October 19, 2023 Deficiency Letter that Plaintiff provide HIPAA authorizations for two physicians who performed surgical procedures on Plaintiff and who prescribed such pain medications.  Wiltenburg Declaration (Dkt. 95-1) ¶ 43; Defendants' Deficiency Letter (Dkt. 95-10) at 2.  Plaintiff opposes Defendants' request on the grounds that Defendants fail to provide sufficient descriptions of the physicians or providers at issue, Barrett Declaration and Memorandum of Law (Dkt. 115) ¶¶ 63, 75, or that in the case of Dr. Julie Thomas and Dr. John Stanevich, whom Plaintiff asserts are probably the physicians that prescribed Plaintiff's pain medication, Plaintiff has provided HIPAA authorizations on June 21, 2022 for Dr. Thomas and on an earlier date (not provided by Plaintiff) for Dr. Stanevich.  *Id.* ¶¶ 69, 71.  Defendants do not address this issue in Defendants' Reply (Dkt. 120) (*passim*).

Plaintiff does not contest that Defendants' requests seek relevant information; rather, Plaintiff asserts that Plaintiff lacks knowledge sufficient to further identify the three providers for Plaintiff's mental health treatment referenced in Defendants' motion, *see* Wiltenburg Declaration (Dkt. 95-1) ¶ 52.  Barrett Declaration (Dkt. 115) ¶ 62, and that Plaintiff has testified he is unable to recall such information.  Barrett Declaration (Dkt. 115) ¶ 63.  As noted, *supra,* Defendants do not further address this issue.  Where a party is unable to provide information to enable a requesting party to obtain HIPAA authorizations, the court may exercise its discretion and deny the request for HIPAA authorizations.  The parties cite no authority addressing such issue and the court's research reveals none.  Such is the case here with respect to the three unidentified providers of Plaintiff's mental health care. Accordingly, Defendants' motion is DENIED with respect to this issue.  However, the court notes that Plaintiff's inability to recall the

identity of the three providers may support a Defendants' motion to the trial judge to preclude any testimony relating to the treatment given to Plaintiff by such unidentified health care providers.

(5)    Plaintiff's E-mails to Julie Senko.

Defendants also request Plaintiff be compelled to provide all e-mails Plaintiff testified he sent to Julie Senko, then vice-president of human resources at Steuben Foods, concerning the discriminatory incidents as alleged in the Amended Complaint which e-mails were provided by Plaintiff to his attorney as Plaintiff testified in his deposition.  *See* Wiltenburg Declaration (Dkt. 95-1) ¶ 44.  According to Defendants, Plaintiff produced only one such e-mail in response to Defendants' Document Request, which caused Defendants to demand, in Defendants' October 19, 2023 Deficiency Letter, Plaintiff produce all such e-mails.  *Id.* ¶ 44 (referencing Dkt. 95-10 at 2).  Plaintiff responds by asserting Plaintiff has reviewed his records and has no further documents responsive to Defendants' requests.  Barrett Declaration (Dkt. 115) ¶¶ 52, 56 (referencing Dkt. 115-7 ¶ 12, an affidavit by Plaintiff, dated March 11, 2024, in which Plaintiff avers, *inter alia*, that he has searched his e-mails and other documents including any pertaining to e-mails with Steuben employees, including Ms. Senko, and that to the extent he located any such responsive e-mails or documents, he turned them over to his attorney who produced them to Defendants).  *See* Dkt. 115-7 ¶ 12.  Plaintiff's response does not contest Defendants' request for e-mails sent by Plaintiff to Ms. Senko are discoverable.  As such, it appears that Plaintiff's testimony and affidavit avers Plaintiff has carefully reviewed Plaintiff's litigation file and has found no copies of any of Plaintiff's e-mails to Senko, other than the one previously produced by Plaintiff.  *See*

17

*Jones v. Cattaraugus-Little Valley Central School District*, 2022 WL 109352, at \*2 (W.D.N.Y. Jan. 12, 2022) (where plaintiff's response to document request is based on a lack of plaintiff's possession of responsive documents the court may direct plaintiff to provide an affidavit describing, with reasonable particularity, all locations of potentially responsive documents in fact searched by plaintiff) (citing *In re Terrorist Attacks on September 11, 2001*, 2018 WL 3387494, at \* 6 (S.D.N.Y. July 11, 2018) (court has discretion to require responding party describe party's search efforts for responsive documents)).  However, based on Plaintiff's affidavit and deposition testimony that he has searched his e-mails for responsive documents and has been unable to discover any additional e-mails responsive to Defendants' request, the court finds it unnecessary to require Plaintiff to search further or to provide an affidavit explaining in detail his efforts.  Moreover, the court notes Defendants have not offered any rebuttal arguments in further support of Defendants' motion, with respect to Plaintiff's possible additional e-mails to Ms. Senko, in Defendants' reply.  Accordingly, Defendants' motion is DENIED on this issue.

(6)   <u>Defendants' Requests for Admission and Second Request for Production of Documents</u>.

Defendants served Plaintiff with Defendants' First Set Of Requests for Admission pursuant to Fed.R.Civ.P. 36(a)(1) ("Rule 36__") (*see* Dkt. 95-23) ("Defendants' RFAs" or "the RFA") and Defendants' Second Request For Production of Documents ("Rule 34(a)__") on November 2, 2023 (*see* Dkt. 95-24) ("Defendants' Second Document Request")).  Defendants' RFAs request Plaintiff to admit to being the person who was arrested on November 16, 1998, and indicted for felony murder and robbery, and was convicted by guilty plea of Robbery in the Second Degree on February 10, 2000, at age

18,[3] in connection with a shooting of a pawnbroker in Brooklyn, New York on the same

date.  Defendants' RFAs also request Plaintiff admit to using an alias, *i.e.* false, name of

Eliott Mills in connection with his 1998 arrest and 2000 conviction.  The RFA's further

request Plaintiff admit to being sentenced to a term of 12 years of imprisonment and

that Plaintiff served his sentence in the custody of the N.Y. State Department of

Correction and Community Services ("DOCCS") at several DOCCS facilities including,

beginning in 2006, at the Wyoming Correctional Facility located in Attica, New York.

Defendants' RFA's also request Plaintiff admit to never informing DOCCS that his birth

name was Rudolph Mills and that he became romantically involved with one Rachel

Gorski, a DOCCS employee, while in the Wyoming Correctional Facility.  The RFAs

also requested Plaintiff admit to living with Ms. Gorski from the time he was released on

parole in February 2009 until 2012 and that on October 12, 2023 he contacted Gorski

prior to her deposition in this case on October 23, 2023 and spoke with Ms. Gorski

about her prospective testimony, specifically with regard to her meeting Plaintiff while

Plaintiff was incarcerated in the Wyoming Correctional Facility.

Defendants' Second Document Request requires Plaintiff to provide portions of

(1) Plaintiff's criminal records regarding Plaintiff's criminal convictions maintained by the

New York State Division of Criminal Justice Services ("NYSDCJS") by submitting a

NYSDCJS form along with Plaintiff's fingerprints to the NYSDCJS, and (2) Plaintiff's

unsuppressed, *i.e.*, unsealed, arrest records since August 30, 2017 maintained by the

---

[3] Based on Plaintiff's admission that his correct date of birth is April __, 1981, *see* Plaintiff's Response to Defendants' Request for Admission No. 4 (Dkt. 120-1) at 3, Defendants asserted, in a December 6, 2023 e-mail to Barrett, that Plaintiff was 18 when Plaintiff, as Eliott Mills, plead guilty to first degree robbery and arguing that Plaintiff was 17 at that time of the crime on February 16, 1998.  As such, Defendants contend that under N.Y.Crim.Proc.Law 720.10[2](a)(iii) and N.Y. Penal Law § 70.02, Mills was properly prosecuted as an adult.  *See* Dkt. 95-26 at 1.

NYSDCJS.  *See* Wiltenburg Declaration (Dkt. 95-1) ¶ 84 (referencing (Dkt. 95-24) at 5, (Dkt. 95-24 Exh. A) at 7-11).

Under Rule 36(a)(3), a requested party, here, Plaintiff, is required to answer an RFA unless within 30 days of service of the RFA, such party serves a written objection to the RFA.  *See* Fed.R.Civ.P. 36(a)(3).  Failure to timely answer or object results in the matter being deemed admitted.  *Id.*  The burden is on the party raising the objection to show that the objection is proper.  *See Syventive Molding Solutions, Inc. v. Husky Injection Molding Systems, Inc.*, 2010 WL 11537874, at *3 (D.Vt. Feb. 10, 2010) (granting the defendant's motion to compel the plaintiff to provide answers to 522 requests for admission when the plaintiff failed to meet its burden of establishing that providing answers to all 522 was particularly onerous).  Plaintiff asserts several grounds for Plaintiff's objections to Defendants' RFAs 1-3, 6-32, and 47, Defendants' Memorandum of Law (Dkt. 95 at 17) which would, if admitted by Plaintiff, establish that Plaintiff was convicted by guilty plea February 10, 2000 (see Defendants' RFAs, Nos. 6, 7, 8, 9, (Dkt. 120-1) at 3-4, of a felony under the name Eliott Mills, including relevancy, lack of proportionality, harassment of Plaintiff, that Plaintiff's criminal records, if any, have been sealed pursuant to N.Y.Crim.Proc. Law §§ 160.50, 160.59 and a statutory privilege based on N.Y.Crim.Proc. Law § 160.50.  (Dkt. 120-1) at 1-16; *see also* Wiltenburg Declaration (Dkt. 95-1) ¶ 86.  If the court determines that an objection is improper and the requesting party has filed a motion to compel, the responding party, here, Plaintiff, will be liable to the requesting party, Defendants, for the requesting party's expenses including reasonable attorneys fees pursuant to Fed.R.Civ.P. 37(c). *See* Fed.R.Civ.P. 36(a)(6) ("Rule 37(a)(5) applies to an award of expenses."); *Abston v.*

20

*Fitness Co.*, 216 F.R.D. 143, 148 (D.D.C. 2003) (awarding attorney fees to party who successfully moved to compel answers to requests for admission).

Whether Plaintiff is in fact the same person convicted by plea under the name Eliott Mills of armed robbery in the first degree in 2000, a felony in New York State, *see* N.Y. Penal Law § 160.15, would be potentially admissible evidence pursuant to Fed.R.Evid. 609(a) (requiring admissibility of witness's criminal conviction for a crime punishable by more than on year's imprisonment) on the issue of Plaintiff's credibility as a witness. *See Scott v. Howard*, 2018 WL 3756799, at *2 (W.D.N.Y. Aug. 18, 2018) (denying plaintiff's motion to preclude defendants from deposing plaintiff with respect to the plaintiff's record of criminal convictions because the information sought was relevant given that it may be used to challenge plaintiff's credibility if plaintiff testified at trial (citing cases)). In addition, as Defendants have asserted an affirmative defense of after-acquired evidence, *see* Defendants' Answer (Dkt. 27) ¶ 139 (Defendants' Seventeenth Defense), specifically evidence that Plaintiff misrepresented on his employment application to Defendant Steuben Foods dated December 22, 2009, that Plaintiff was not convicted of any crime, *see* Dkt. 95-23 at 8 (Exh. A to Defendants' First Set Of Requests For Admission To Plaintiff), that provided grounds for Plaintiff's termination as of the date Defendant discovered such falsity thereby limiting Plaintiff's entitlement to front pay commencing on the date on which Defendants first acquired knowledge of Plaintiff's deception, and limiting Plaintiff's back pay to the period between Plaintiff's termination and the date on which the discovery was made, *Smith v. North Shore-Long Island Jewish Health System*, 286 F.Supp.3d 501, 510 (E.D.N.Y. 2018) (citing *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 362-63 (1995)

("*McKennon*")), *see Vichare v. AMBAC Inc.*, 106 F.3d 457, 467-68 (2d Cir. 1996) (observing *McKennon* permits use of after-acquired evidence to defeat a plaintiff's claim for front pay and reinstatement, as well as to limit recovery of back pay to the period between the date of the unlawful termination and the date on which the after-acquired evidence was discovered), also establishes that the fact of Plaintiff's identity as the Eliott Mills convicted in 2000 armed robbery is relevant to Plaintiff's credibility and Defendants' defenses and as such are within the scope of Defendants' RFAs.  Plaintiff's objection to Defendants' RFAs 1-3, 6-31, and 47 based on a lack of relevancy are therefore OVERRULED as without merit.

The proportionality requirement of Rule 26(b)(1) is applicable to challenges to RFAs served pursuant to Rule 36(a)(1)(A).  *S.E.C. v. Ripple Labs, Inc.*, 2021 WL 5336970, at *3 (S.D.N.Y. Oct. 21, 2021) (lack of proportionality of defendant's voluminous requests for admission required plaintiff's objection to be upheld); *Guadalupe v. City of New York*, 2016 WL 3570545, at *2 (S.D.N.Y. June 24, 2016) (proportionality requirement requires court to carefully scrutinize RFAs as the "burden of responding to the requests may be more than offset by the fact that future discovery is limited to the extent that facts are admitted").

Under Rule 26(b)(1), information sought by an RFA must be proportional to the needs of the case and is determined by the court's weighing of six factors: (1) the importance of the issues at stake in the case, (2) the amount in controversy, (3) the parties' access to relevant information, (4) the parties' resources, (5) the importance of the requested discovery in resolving the issues in the case, and (6) whether the burden or expense of the requested discovery outweighs its likely benefit.  *See* Fed.R.Civ.P.

26(b)(1).  The court has broad discretion in weighing these Rule 26(b)(1) factors, *see*

*ValveTech, Inc.*, 2021 WL 630910, at * 2, no single factor is determinative and the

burden to show a lack of proportionality is on the party seeking to avoid the discovery at

issue.  *See Wall*, 341 F.R.D. 1, 5 (D.D.C. 2022) (no single factor is determinative),and

*Mortgage Resolution Servicing, LLC*, 2016 WL 3906712, at *3 (the party resisting

discovery has the burden of showing a lack of relevancy or proportionality).  Here,

Plaintiff fails to support any of the factors relevant to the question of proportionality of

Defendants' RFAs.

Specifically, Plaintiff's opposition is based exclusively on whether Defendants are

entitled to inquire as to Plaintiff's arrest, not Plaintiff's conviction record.  *See* Dkt. 115 at

¶¶ 96-104 (asserting N.Y. Exec. (Human Rights) Law § 296's prohibition on accessing

an individual's arrest record and out-of-district caselaw holding arrest records not

discoverable).  Thus, Plaintiff has failed in carrying Plaintiff's burden to establish a valid

objection to Defendants' RFAs based on lack of proportionality.  Moreover, Defendants

demonstrate that the RFAs, if admitted, could establish Plaintiff's conviction for a

serious felony, one that Plaintiff failed to disclose to Defendant Steuben Foods on

Plaintiff's job application form which Plaintiff submitted to Steuben Foods on or about

December 22, 2009, thus adversely affecting Plaintiff's credibility.  Further, an

applicant's false statement on an employment application provides a ground for the

after-acquired evidence defense to a related employment lawsuit.  *See Bermudez v.*

*Karoline's International Restaurant Bakery Corp.*, 2013 WL 6146083, at * (E.D.N.Y.

Nov. 21, 2013) (granting defendants' motion to obtain discovery regarding the plaintiffs'

immigration status as plaintiffs asserted on their employment applications which could

show whether the plaintiffs were precluded by law from seeking backpay).  As Plaintiff seeks $15 million in compensatory damages, the amount in controversy also warrants Plaintiff's answers.  *See Jacobson Warehouse Co., Inc. v. Prestige Brands, Inc.*, 2022 WL 20056068, at *3 (S.D.N.Y. July 21, 2022) (counterclaims valued in excess of $16 million outweighed burden and expense of producing requested materials).

Additionally, Defendants have attempted to obtain Plaintiff's conviction record based on the likelihood that Plaintiff and the Eliott Mills, who was convicted in 2000 of armed robbery, are the same person, by requesting records from the N.Y.S. Department of Corrections and Community Supervision ("DOCCS") and the N.Y.S. Division of Criminal Justice Services ("NYSDCJS").  *See* Wiltenburg Declaration (Dkt. 95-1) ¶¶ 79-81.  However, both DOCCS and NYSDCJS informed Defendants that such records required a notarized signature from Eliott Mills Wiltenburg Declaration ¶ 80 and Exh. 21 (Dkt. 95-22).  The NYSDCJS also informed Defendants that such required signature, *see* Defendants' Exh. 23, Exh. A (Dkt. 95-24) at 9, and fingerprint sample, *see* Defendants' Exh. 23 (Dkt. 95-24) at 9, be that of the party in question, here, Eliott Mills, that the Division is the only source of such official records, and that such records cannot be obtained by a third-party or through a FOIL request.  *See* Dkt. 95-1 n. 6, Wiltenburg Declaration ¶ 81 and Exh. 21.  Thus, Defendants' access to the information pertinent to the issue of Plaintiff's identity as the person who is known in the New York State's criminal justice system as Eliott Mills, a co-identity Plaintiff has repeatedly denied, is not available to Defendants from another source.  That Defendants' resources outweigh Plaintiff's cannot be a controlling factor given the importance of the subject matter of Defendants' rights to support Defendants' after-acquired evidence

defense.  *See Oxbow*, 322 F.R.D. at 8 (determining the proportionality factor regarding the parties' resources did not support denying the defendant's motion to compel where the plaintiff, who sought to recover damages in excess of $ 150,000,000, did not object to the defendant's discovery request based on any asserted inability to pay the estimated $ 140,000 to comply with the discovery requests).  Accordingly, Plaintiff's objection to the RFAs based on an asserted lack of proportionality is without merit and, as such, is OVERRULED.

As regards Plaintiff's harassment objection, given Plaintiff's apparent failure to provide his own attorney with complete information regarding Plaintiff's criminal record in New York State, *see* Barrett Declaration (Dkt. 115) ¶¶ 91, 93 (Barrett stating he "was frustrated" by Plaintiff's failure to disclose to his own counsel his complete criminal history), Defendants' effort to obtain Plaintiff's admission on this issue can hardly be said to constitute harassment.  In addition, according to Barrett, Plaintiff "informed" Barrett that New York State records refer to Plaintiff as Eliott Mills because he, Plaintiff, "gave a fake name to police when he was arrested at the age of 15."  *See* Barrett Declaration (Dkt. 115) ¶ 110.  Thus, Plaintiff's objection to Defendants' RFAs on this ground is wholly without merit and as such is OVERRULED.

As to Plaintiff's contention that N.Y. Crim. Proc. Law §§ 160.50, 160.59 ("§ 160.50," § 160.59") create a privilege, the court finds, once again, no merit in Plaintiff's assertion.  Plaintiff's assertion that under N.Y. Crim. Proc. Law § 160.50 Plaintiff is granted a privilege against disclosure of his criminal conviction record is misinformed. Section 160.50, by its terms, grants to a person in whose favor a criminal proceeding was terminated a right to have such records sealed.  Specifically, Section 160.50

requires that a person's criminal records be sealed "[u]pon the termination of a criminal action or proceeding against a person in favor of such person."  N.Y.Crim.P.Law § 160.50[1] (underlining added).[4]  Therefore, as the prosecution of Eliott Mills as Defendants claim, did not terminate in Eliott Mills's favor, any right to have such records sealed is inapplicable to Plaintiff.  Further, with respect to Plaintiff's assertion that Plaintiff's conviction records were sealed pursuant to N.Y.Crim.Proc. Law § 160.59, again Plaintiff's averment is based on a misreading of the provision. Section 160.59, which permits sealing of conviction records after 10 years from a defendant's release, excludes from its listing of eligible offenses, robbery in the first degree, the very offense of which Eliott Mills was convicted.  *See* N.Y. Crim.Proc.Law § 160.59[1](a) ("Eligible offense" means any crime under New York law "other than . . . a violent felony offense defined in section 70.02 of the penal law.") (underlining added).  N.Y. Penal Law 70.02[1](a) defines a violent felony, *inter alia*, as a Class B violent felony offense and specifically includes robbery in the first degree as defined in N.Y. Penal Law § 160.15. Plaintiff does not dispute that a person named in the indictment as Eliott Mills was convicted of first degree robbery by plea on February 10, 2000 for which he served approximately 7½ years of a 12-year sentence until paroled on February 23, 2009.  Dkt. 95-1 ¶¶ 74, 76.  Therefore, § 160.59 is inapplicable to Eliott Mills and, by the same token, to Plaintiff.

Plaintiff's reliance, *see, e.g.*, (Dkt. 120-1) at 1), on *Rasbach v. Bradt*, 1997 WL 309415, at **3-4 (N.D.N.Y. June 2, 1997) ("*Rasbach*") for the proposition that sealing of a criminal record pursuant to § 160.50 or § 160.59 creates a privilege is misplaced.  In

---

[4]  Unless otherwise indicated, all underling is added.

*Rasbach*, the defendant's conviction was for a violation, not a violent felony as with

Eliott Mills's conviction, and was therefore subject to sealing pursuant to N.Y. Crim.Proc

Law § 160.55[1](c) which provides that a record of conviction for a violation shall be

sealed.  Here, the relevant Mills conviction was for a violent felony for which neither

N.Y.Crim.Proc. Law § 160.50 nor § 160.59 permits sealing.

Moreover, Plaintiff's statement to his attorney that he, Plaintiff, gave a "fake

name" to police upon his arrest for the 1998 robbery, *see* (Dkt. 115) ¶ 110, constitutes

an admission that Plaintiff is indeed the same person, named Eliott Mills, who was

convicted on February 10, 2000 for the crime of first degree robbery.  *See* Fed.R.Evid.

801(d)(2)(A) (statement by party to party's attorney constitutes an admission).  *See*

*United States v. GAF Corp.*, 928 F.2d 1253, 1259 (2d Cir. 1991) ("'statements made by

an attorney concerning a matter within his employment may be admissible against the

party retaining the attorney'" (quoting *United States v. Margiotta*, 662 F.2d 131, 142 (2d

Cir. 1981), *cert. denied*, 461 U.S. 913 (1983))).  Accordingly, there is no merit to

Plaintiff's contention that under New York law, Plaintiff's criminal record, assuming

Plaintiff and Eliott Mills are the same person, was subject to sealing and thus, as

privileged under state law, exempt from discovery; and as such Plaintiff's objection to

Defendants' RFAs on this ground is overruled.  *See Daniels v. City of New York*, 2001

WL 228091, at *1 (S.D.N.Y. Mar. 8, 2001) (state law privileges may be applicable to

federal discovery disputes if the need for the protected information outweighs the

deference to be accorded to the state law privilege).  Here, as the privilege asserted by

Plaintiff is inapplicable to the facts, there is no reason to apply it.  Given that Plaintiff's

objections were wholly without merit and in light of the fact that Plaintiff has, by arguing

that Eliott Mills's criminal conviction was sealed as well as Plaintiff's admission to his attorney, in effect conceded Plaintiff is in fact the Eliott Mills who was convicted of armed robbery on February 10, 2000, the court finds that Plaintiff's objections should be deemed overruled.  Therefore, Defendants' motion is GRANTED and Plaintiff shall admit or deny each of Defendants' RFAs within 20 days of this Decision and Order. Plaintiff's failure to do so will result in a finding that the RFAs are deemed admitted. *See Madej v. Yale University*, 2020 WL 6270273, at *9 (D.Conn. Oct. 26, 2020).

As to Defendants' Second Document Request served November 2, 2023 (*see* Dkt. 95-24) seeking to compel Plaintiff to provide portions of Plaintiff's, *i.e.*, Eliott Mills's, criminal record maintained by the NYSDCJS and a set of Plaintiff's fingerprints as required by the NYSDCJS to facilitate a comparison of Plaintiff's fingerprints and those of Eliott Mills maintained by NYSDCJS, in order to support Defendants' challenge to Plaintiff's credibility and in support of Defendants' later-acquired evidence defense, the court finds Defendants' request reasonable.  *See Hankins v. City of Philadelphia*, 1996 WL 571755, at *2 (E.D.Pa. Oct. 4, 1996) (directing plaintiff to provide fingerprints necessary to allow defendant to obtain plaintiff's VA records as relevant to defendant's after-acquired evidence defense).  Plaintiff shall therefore provide, at Defendants' expense, within 20 days of this Decision and Order, a full ten finger set of Plaintiff's fingerprints on a form to be provided by Defendants.  Defendants' motion as to this request is therefore GRANTED.

(7)    Plaintiff's Arrest Records.

As Defendants note, Dkt. 95-32 at 21, at Plaintiff's deposition Plaintiff testified he had been, since his termination by Defendant Steuben Foods, on August 30, 2017,

arrested on approximately three occasions.  Upon Defendants' effort to question Plaintiff regarding the circumstances of the arrests Plaintiff refused to answer asserting the Defendants' inquiry lacked relevance and that Plaintiff's records were sealed.  *Id.* Following the parties' request for the court's determination of the issue, the court directed the parties to brief the issue.  *Id.*  Defendants raise two contentions in support of Defendants' request.  First, that Plaintiff has failed to provide any documentation that Plaintiff's arrest records had in fact been sealed pursuant to N.Y.Crim.Proc. Law § 160.50, *see* (Dkt. 95-32) at 21, and second, that even if Plaintiff's prior arrests were sealed in accordance with § 160.50, New York law should not impede important federal interests in broad discovery and in restricting important federal policy.  *Id.* at 22 (quoting *Silver Sands Motel, Inc. v. Long Island Capital Management*, 2022 WL 767698, at \*2 (E.D.N.Y. Mar. 14, 2022) (*Silver Sands Motel, Inc.*)).  Defendants also cite to this court's decision in *Cauley v. Ingram Micro, Inc.*, 216 F.R.D. 241, 244 (W.D.N.Y. 2003), *id.*, granting defendant's motion compelling plaintiff to provide plaintiff's arrest records. *See Cauley*, 216 F.R.D. at 244 (granting defendant's motion to compel plaintiff's "personal history").

However, courts grant access to arrest records only where the fact of such arrest is relevant to the question of the emotional distress damages or where the plaintiff has, by a subsequent claim, placed the circumstances of plaintiff's prior arrest at issue.  *See Cicero v. City of New York*, 2011 WL 3099898, at \*4 (E.D.N.Y. July 25, 2011) (in plaintiff's action for false arrest plaintiff's prior arrests relevant to question of plaintiff's emotional distress claim resulting from the alleged false arrest as limited by plaintiff's experiences in connection with plaintiff's prior incarcerations); *Noel v. Clouston*, 2023

WL 7101324, at *2 (W.D.N.Y. Oct. 27, 2023) (in plaintiff's excessive force claim plaintiff's underlying arrest was at issue and thus justified disclosure); *Cauley*, 219 F.R.D. at 244 (court found plaintiff's arrest records may reasonably assist defendant's expert in preparing for plaintiff's Rule 36 psychological examination).  In *Silver Sands Motel, Inc.*, the court, in denying plaintiff's request for defendant's arrest record, found that defendant did not place such records at issue and that absent the custodian's refusal to provide such records to plaintiff, a ruling by the court on whether § 160.50 is applicable was premature.  Here, in the instant Title VII action, Defendants fail to point to any issue relevant to Plaintiff's claim or Plaintiff's asserted damages which could conceivably, by referencing Plaintiff's prior arrests since Plaintiff's termination, assist Defendants in defending against Plaintiff's claims.  Moreover, in light of the substantive deficiencies in Defendants' motion on this issue, that Plaintiff failed to comply with Defendant's request for documents supporting that Plaintiff's arrest records have in fact been sealed as Plaintiff alleges, is thereby rendered moot.  Based on this analysis, Defendants' motion as to this issue is DENIED.

(8)    Plaintiff's Federal and N.Y. State Tax Returns.

        Defendants contend that it is necessary to request Plaintiff to provide proper authorizations for Defendants to obtain Plaintiff's federal and state tax returns filed by Plaintiff since August 2007 given that Plaintiff testified at Plaintiff's September 2023 deposition that he was unsure if his answers to Defendants' interrogatories seeking Plaintiff's income for the period since August 2007 were accurate and that Defendants' have been unable to obtain such information directly from Plaintiff's former employees. *See* Wiltenburg Declaration (Dkt. 95-1) ¶ 25; Defendants' Memorandum of Law (Dkt.

95-32) at 23.  Although Plaintiff provided an authorization to Defendants in order to obtain copies of Plaintiff's federal income tax returns for the 2007 to 2022 period, the I.R.S. rejected such authorization for reasons the I.R.S. notified Plaintiff, but not Defendants.  *Id.* at 24.  Plaintiff declined to provide any authorization to allow Defendants to obtain copies of Plaintiff's New York State tax returns. Wiltenburg Declaration (Dkt. 95-1) ¶ 16.  Accordingly, Defendants request an order compelling Plaintiff to provide fully executed and effective authorizations to enable Defendants to obtain such records.  According to Defendants, that Plaintiff engaged in taxable employment since 2017 is supported by the fact that Plaintiff is subject to a 2020 New York State Tax warrant.  *Id.* ¶¶ 97-98 (referencing Defendants' Exh. 29 (Dkt. 95-30)). Such warrant does not definitively support that Plaintiff received taxable income since Plaintiff's 2017 discharge as the warrant covers the six-year period prior to its docket date of January 30, 2020.  *See DeMartino v. New York State Department of Taxation and Finance*, 2023 WL 2563967, at *2 n. 2 (2d Cir. Mar. 20, 2023) (noting that pursuant to N.Y. Tax Law § 692(c), the tax commissioner may issue a tax warrant within six years of a delinquent tax assessment).  Thus, it is possible that the warrant is for the period 2014 to 2017, prior to Plaintiff's termination.   Despite Defendants' December 20, 2023 e-mail, request, *see* Wiltenburg Declaration (Dkt. 95-1) ¶ 98, Plaintiff failed to comply with Defendants' request.  *Id.*  In response, Plaintiff asserts Defendants have failed to indicate in what regard the IRS authorization which Plaintiff submitted to the IRS at Defendants' request was inadequate, Barrett Declaration (Dkt. 115) ¶¶ 76-79), and that Defendants' failure to provide "specific corrections" relative to the asserted deficiencies in such authorizations is fatal to Defendants' motion on this issue. *Id.*  However, such

assertions ignore Defendants' contention that the IRS provided only to Plaintiff an explanation of such deficiencies so that Defendants without knowledge as to how to correct the I.R.S.'s stated deficiencies in Defendants' authorization.  *See* Wiltenburg Declaration (Dkt. 95-1) ¶ 96 (referencing Dkt. 95-32).  Plaintiff fails to address why he resists providing the requested authorizations to obtain Plaintiff's New York State tax returns.

Courts routinely grant disclosure of tax returns where the returns are relevant to the subject matter of the action and there is a compelling need for such information where the information is not otherwise readily available.  *See In re Air Crash near Clarence Center, New York, on February 12, 2009*, 2013 WL 5836975, at * 5 (W.D.N.Y. Nov. 4, 2013) ("discovery [of tax returns] is appropriate only where the moving party demonstrates that: '(1) it clearly appears that [the tax returns] are relevant to the subject matter of the action or to the issues raised thereunder; and (2) there is a compelling need for their disclosure because the information contained in the tax returns is not otherwise readily obtainable.'" (quoting *Gattengno v. PriceWaterhouseCoopers, LLP,* 205 F.R.D. 70, 71–72 (D.Conn. 2001) (further quotation omitted))); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, 2007 WL 1521117, at *7 (S.D.N.Y. May 24, 2007).  Plaintiff's argument is therefore without merit and Defendants' motion as to this issue is GRANTED.  Defendants shall provide the necessary forms for Plaintiff's execution and Plaintiff's full compliance with Defendants' request and this ruling shall be completed within 20 days of this Decision and Order.

(9)    <u>Plaintiff's Failure to Comply with Court Ordered Payment of Defendants'
       Attorneys Fees</u>.

In its Decision and Order filed July 27, 2023, the court granted Defendants'

request for an award of Defendants' reasonable attorneys fees pursuant to Fed.R.Civ.P.

37(a)(5)(B) ("Rule 37(a)(5)(B)"), *see Mills v. Steuben Foods, Incorporated*, 2023 WL

4781904, at **1-2 (W.D.N.Y. July 27, 2023), in the amount of $5,780 awarded in

connection with Defendants' successful opposition to Plaintiff's motion to compel (Dkt.

40). *See* Dkt. 62. Based on Plaintiff's failure to provide any grounds for assigning

responsibility for Plaintiff's unsuccessful motion in accordance with Rule 37(a)(5)(B),

*see* July 27, 2023 Decision and Order (Dkt. 70) at 9-10, the court directed Plaintiff and

Plaintiff's counsel to bear the expense in equal shares, *i.e.*, $2,890 each, and to effect

such payments within 30 days of the Decision and Order or August 27, 2023. *See Mills*,

2023 WL 4781904, at *4. On August 28, 2023 (Dkt 74), Plaintiff requested the court

extend the time for his payments and; by Text Order, filed September 1, 2023, *see* Dkt.

77, the court granted Plaintiff's request and extended the time for Plaintiff's compliance

to October 2, 2023. Defendants also aver that Plaintiff's counsel made payment of

counsel's portion of the fee award on October 3, 2023, but that Plaintiff has not yet

made such payment. Wiltenburg Declaration (Dkt. 9501) ¶ 100. Defendants now claim

Plaintiff continues to be in default of Plaintiff's obligation to make such payment and

requests the court file a Certificate of Contempt with the District Judge pursuant to 28

U.S.C. § 636(e)(6)(B)(iii) against Plaintiff to obtain Plaintiff's compliance. *See* Dkt. 95-

11 at 25; Dkt. 95-32 at 27-28. Plaintiff does not deny Plaintiff has failed to make the

required payment and instead opposes this request arguing that Plaintiff's poverty is a

defense to any contempt. *See* Dkt. 115 ¶¶ 106-108 (citing caselaw). Plaintiff's

opposition on this ground refers to Plaintiff's Affidavit (Dkt. 115-7) ¶¶ 10-11, dated

March 11, 2024, in which Plaintiff avers that Plaintiff's financial situation is "dire," that

Plaintiff is behind in his rent by $12,000, has "no money," and relies on funds "borrowed

from family and friends."   In reply, Defendants contend Plaintiff has failed to provide

any evidence of Plaintiff's alleged poverty and failed to seek relief from the October 2,

2023 deadline for Plaintiff's compliance from the court.  Wiltenburg Declaration (Dkt. 95-

1) ¶ 99; Defendants' Reply (Dkt. 120) ¶¶ 6-23).

The court notes that in the October 17, 2023 Decision and Order, *see Mills v.*

*Steuben Foods, Incorporated*, 2023 WL 682565 at *3 (W.D.N.Y. Oct. 17, 2023),

granting Defendants' motion, pursuant to Fed.R.Civ.P. 37(a)(1)(A), for attorneys fees

incurred in connection with Defendants' successful motion to compel filed September

27, 2022 (Dkt. 38), *see Mills v. Steuben Foods, Incorporated*, 2023 WL 179579, at ** 1-

5 (W.D.N.Y. Jan. 13, 2023), the court awarded Defendants $11,819.00 in attorneys fees

to be paid by Plaintiff's and Plaintiff's counsel in equal shares, *i.e.*, $5,909.50 each.  *See*

*Mills*, 2023 WL 682565, at *3.  However, based on Plaintiff's assertion of indigency, *id.,*

the court determined that Plaintiff may defer payment until 30 days after Plaintiff is able

to recover any damages upon trial or possible settlement of the case, *citing Hop-Wah v.*

*Coughlin*, 1989 WL 138907, at *4 (W.D.N.Y. Nov. 14, 1989), *see id.*, and Defendants

did not appeal the court's determination presumably as the court also required Plaintiff

to make the required payment regardless of the outcome of Plaintiff's case.  *See Mills*,

2023 WL 6825265, at *3.  However, Plaintiff's opposition to Defendants' request for

payment of $2,890 owed pursuant to the July 27, 2023 Decision and Order is based

solely on Plaintiff's alleged continued indigency; relevantly, Plaintiff does not seek a

modification of the court's deadline of October 2, 2023 for such payment similar to that provided in connection with the July 27, 2023 Decision and Order, *see* Barrett Declaration (Dkt. 115) ¶¶ 106-107.

A party's failure to pay an award of attorneys fees in connection with a discovery dispute pursuant to Rule 37 as directed by a magistrate judge is enforceable through the exercise of the court's authority to find the defaulting party is in contempt of court through a certification to a district judge in accordance with 28 U.S.C. § 636(e)(6)(B)(iii) ("§ 636(e)(6)(B)(iii)"). *See Dep't. of Toxic Substances Control v. Rossi*, 2022 WL 3648890, at *10 (N.D.Calif. Aug. 2, 2022 (defendants', *inter alia*, failure to pay plaintiff $15,518 in court awarded attorneys fees for defendants' violation of Rule 37 constituted contempt of court), *report and recommendation adopted*, 2022 WL 3650629, at *1 (N.D.Calif. Aug. 24, 2022). "'A party may be held in civil contempt of a court order if (1) the order is clear and unambiguous, (2) proof of noncompliance is also clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *S.E.C. v. Durante*, 641 Fed.Appx. 73, 76 (2d Cir. 2016) (quoting *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 655 (2d Cir. 2004)). "[W]hen analyzing a [request for a finding of] civil contempt before a magistrate judge exercising authority granted by a district judge under 28 U.S.C. § 636(a) or (b), the magistrate judge is required to certify the facts concerning such putative contempt to a district judge." *Chautauqua Commerce Park, LLC v. Main Street America Assuance Company*, 2023 WL 6541371, at *2 (W.D.N.Y. Oct. 6, 2023). "The statute also provides that the magistrate judge may serve the alleged contemnor with an order to show cause before the district judge why the person

should not be held in contempt." *Id.*  Here, the district judge's referral order to the

undersigned (Dkt. 28) was pursuant to 28 U.S.C. § 636(b)(1)(A).  Therefore,

Defendants' request may be certified to the District Judge pursuant to § 636(e)(6)(B)(iii).

Plaintiff does not dispute that Plaintiff was ordered by the July 27, 2023 Decision

and Order to pay Defendants $2,890 in attorneys fees pursuant to Rule 37(a)(1)(B) not

later than October 2, 2023, *see* Dkt. 70 at 10, and that Plaintiff has failed to comply with

such order.  Rather, Plaintiff asserts, as stated, *supra*, at 33-34, Plaintiff is indigent and

therefore unable to comply.  However, an alleged contemnor who has failed to make

payments directed by the court "bears the burden of producing evidence of his inability

to comply."  *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (citing *United

States v. Rylander*, 460 U.S. 752, 756 (1983)).  "Once the movant has carried its burden

and established the three elements necessary for a finding of contempt, the burden

shifts to the alleged contemnor, who must produce evidence establishing a complete

inability to pay."  *S.E.C. v. Bronson*, 2021 WL 3167853, at *5 (S.D.N.Y. Jan. 19, 2021)

(internal citations omitted).  "To carry this burden and prevail on an inability-to-pay

defense, the alleged contemnor must 'establish his inability clearly, plainly, and

unmistakably.'"  *Id.* (citations and internal quotation marks omitted); *S.E.C. v. Universal

Exp., Inc.*, 546 F.Supp.2d 132, 140 (S.D.N.Y. 2008) ("generalized assertions of poverty"

are insufficient to demonstrate an inability to pay).  Here, a fair reading of the record

supports a finding that Plaintiff has failed to provide any evidence of his asserted

indigency, for example, a statement from his landlord corroborating Plaintiff's statement

that he is $12,000 behind on his rent.  Thus, the court is required to certify, as

Defendants request, these facts to Judge Skretny as required by § 636(e)(6)(b)(iii) for

his consideration and to enter a show cause order requiring Plaintiff's response.  Such Certification and Order to Show Cause will be made in a separate filing.  Defendants' Motion on this request is therefore GRANTED.

(10)  Plaintiff's Witness Tampering.

Defendants request that the court impose sanctions on Plaintiff on account of Plaintiff's effort to influence the testimony by a non-party witness, one Rachel Gorski ("Ms. Gorski" or "Gorski"),[5] former DOCCS attorney, whom Defendants had subpoenaed for a deposition which occurred on October 23, 2023 ("the Gorski Deposition").  *See* Wiltenburg Declaration (Dkt. 95-1) ¶ 54.  Defendants request the court impose whatever sanction it believes appropriate to Plaintiff for Plaintiff's misconduct.  Defendants' Memorandum of Law (Dkt. 95-32) at 27.  Specifically, in her deposition, Ms. Gorski testified that on October 12, 2023 Plaintiff contacted her by telephone and engaged Ms. Gorski in a one hour and 38 minute telephone call during which Plaintiff requested Gorski testify falsely at her deposition that they had been introduced "through a friend of a friend rather than in the prison," where Plaintiff was incarcerated in 2006 when, according to Gorski, they initially met.  Gorski Deposition Transcript (Dkt. 95-14) at 18, 20.  Gorski further testified she met Plaintiff, known to her as Rudy Mills, while Plaintiff was incarcerated in 2006 at the N.Y. State Department of Corrections and Community Supervision ("DOCCS") Wyoming Correctional Facility serving a 12-year sentence based on a conviction of Robbery in the First Degree under the name Eliott Mills.  Dkt. 95-14 at 2-3.  Plaintiff had informed Gorski of his arrest at age 17 under a false name he gave to police and that he had also given a false date of

_____

[5]  Based on the record, there is no known relationship between Ms. Gorski and Defendant Debra Gorski.

birth to police upon his arrest.  *Id.* at 6.  Upon Plaintiff's release on parole from state prison in 2009, Plaintiff resided with Gorski until August 2012 at which time their relationship ended because Plaintiff had "been unfaithful" and fathered a child with another woman without Gorski's knowledge.  *Id.* at 11-13.  During the October 12, 2023 telephone call to Gorski, Plaintiff mentioned the New York State DOCCS Inspector General which Gorski "felt like a threat," because such statement suggested to Gorski that unless Gorski complied with Plaintiff's request to provide false testimony as Plaintiff had requested, Plaintiff would cause the DOCCS Inspector General to investigate Gorski's prior relationship with Plaintiff while Plaintiff was incarcerated as Eliott Mills.  *Id.* at 19, 28.  Ms. Gorski was repelled by Plaintiff's request that she lie during her deposition regarding the circumstances of where and how they first met.  *Id.* at 27.  As a result, she considered Plaintiff's phone call to be harassing and a threat.  *Id.* at 19.

Plaintiff disputes Gorski's testimony arguing that Gorski "lied" in testifying that Plaintiff "tried to persuade her to give inaccurate testimony."  Plaintiff's Affidavit (Dkt. 115-7) ¶ 4; *see also* Barrett Declaration (Dkt. 115) ¶ 110 (Plaintiff asserts that it was Gorski's "*interpretation*" that Plaintiff "attempted to convince her to hide his incarceration") (italic in original) (referencing Dkt. 95-14 at 27).  Plaintiff states Gorski's "false testimony" indicated that she still harbors ill feelings toward Plaintiff because of their breakup 12 years ago, Plaintiff's Affidavit (Dkt. 115-7) ¶ 5, and that Plaintiff spoke to Gorski as an "old friend."  *Id.* ¶ 6.  Plaintiff's assertions are incredible on their face for several reasons.

First, nothing in Plaintiff's denial explains why Plaintiff found it necessary to contact Ms. Gorski 12 days prior to Gorski's deposition, a fact which Plaintiff does not

deny, after such a long hiatus other than to persuade her to give false testimony as to

actual circumstances of their meeting in 2006 while Plaintiff was incarcerated, under the

name Eliott Mills, in the Wyoming Correctional Facility.  Plaintiff has denied he was

convicted of a serious felony specifically armed robbery, *see* Dkt. 95-23 at 8, (Plaintiff's

December 22, 2009 application for employment with Steuben), and it is a reasonable

inference that Gorski's recollection of the circumstances of their meeting in 2006 while

Plaintiff was incarcerated would tend to defeat Plaintiff's assertion in answering the

question "have you ever been convicted of a crime" by checking the "no" box on his

2009 Steuben employment application thereby falsely representing to Defendant

Steuben that he had not been convicted of a crime. *See Id.*  Second, Plaintiff's

averment that he had contacted Gorski as an "old friend," borders on the ludicrous given

that Plaintiff also acknowledged Gorski terminated their relationship in 2012 based on

Plaintiff's unfaithfulness.  *See* (Dkt. 115-7) ¶ 5.  Third, Plaintiff admitted to his attorney

that he had been "incarcerated" under the name Eliott Mills, *see* Barrett Declaration

(Dkt. 115) ¶ 110 (stating Plaintiff "informed" Barrett that Plaintiff "was incarcerated"

under the "fake name" that Plaintiff gave to police when Plaintiff was arrested for the

armed robbery at age 15).  *Id.* ¶ 110.  *See also* Barrett Declaration (Dkt. 115) ¶ 19

(Plaintiff told Barrett "<u>his</u> [Plaintiff's] incarceration and arrest history had been 'sealed.'")

Such information provides additional support that Plaintiff was motivated to call Gorski

to persuade her to lie at her deposition about where and how they met in furtherance of

Plaintiff's heretofore successful scheme to avoid official recognition of the fact that he

and Eliott Mills are the same person as such fact provides evidence supporting

Defendants' after-acquired evidence defense a fact of which Plaintiff presumably was

then aware.  Significantly, Plaintiff does not deny Barrett's averment in which Barrett states Plaintiff's admission to being Eliott Mills with exactitude.

Notably, Plaintiff does not deny that in the October 12, 2023 telephone conversation with Gorski he raised the subject of how and where Gorski and he met, specifically, whether they met while Plaintiff was incarcerated at the Wyoming Correctional Facility as Gorski testified, which would imply that Plaintiff and Eliott Mills were the same person thereby supporting that Plaintiff falsely stated on his Steuben employment application that he had been not convicted of a crime, or through "a friend of a friend," as Gorski testified Plaintiff had urged her to so testify at her deposition, an assertion tending to negate the fact that Plaintiff provided a false answer to Defendant Steuben's employment application regarding Plaintiff's criminal record thereby undermining Defendants' after-acquired evidence defense.  The question thus arises as to Plaintiff's motivation in bringing up this subject in a telephone conversation with Gorski, a matter of days before Gorski's deposition, and without any significant contact with Gorski for many years.  In the court's view, such facts fairly support an inference that Plaintiff called Gorski in an attempt to persuade her to testify falsely regarding the circumstances of where and how they met, thus supporting Defendants' motion requesting sanctions against Plaintiff for attempted witness tampering.  Significantly, Plaintiff also does not deny mentioning to Gorski the possibility of his informing the DOCCS Inspector General about their prior relationship while Plaintiff was incarcerated which Gorski took to mean that unless Gorski testified as Plaintiff requested, Plaintiff would carry out his threat to do so with potentially negative personal consequences to Gorski thereby tending to confirm Gorski's version of the conversation with Plaintiff.

Further, Plaintiff asserts that Gorski's belief that Plaintiff's conversation with her regarding the circumstances of their initial meeting amounted to an attempt to tamper with her testimony was based on her "interpretation" of what Plaintiff said to her while also accusing Gorski of lying about this part of the conversation. *See* Barrett Declaration (Dkt. 115) ¶ 23. However, an "interpretation" by an interlocutor of what a person says hardly supports that such "interpretation" constitutes a lie as Plaintiff characterizes Gorski's testimony. Plaintiff's assertion of such inconsistency further supports that Plaintiff's averments on this issue lack credibility. Thus, that Plaintiff's statement to Gorski is subject to "interpretation," as Plaintiff asserts, effectively concedes that an "interpretation" adverse to Plaintiff, as Gorski testified, was truthful.

Finally, in Plaintiff's counsel's Motion to Withdraw (Dkt. 125), Barrett's supporting affidavit filed under seal pursuant to Local Rule Civ.P. 83.2(c)(4) (Dkt. 139) ("*In Camera* Affidavit") states that among other reasons for withdrawal is that Plaintiff's counsel was surprised by Gorski's testimony regarding the fact of Plaintiff's improper telephone communication with Gorski (*In Camera* Affidavit ¶ 5, 6) thereby supporting that Plaintiff had failed to inform counsel of his communication with Gorski as Barrett had previously averred, *see* Barrett Declaration in Opposition to Defendants' Motion To Compel (Dkt. 115) ¶ 20, and that Gorski had, in the view of Barrett who appeared for Plaintiff at Gorski's deposition, *see* (Dkt. 95-14) at 2, testified truthfully regarding her testimony that Plaintiff had, in his phone conversation with Gorski, attempted to induce her to testify falsely as to the circumstances of how and where they first met. Absent such a view on the part of Plaintiff's attorney as to Gorski's credibility it is doubtful that Plaintiff's

counsel would have found it necessary to withdraw.  Based on these considerations, the

court finds Plaintiff's contrary assertions lack credibility.

Courts have inherent power to impose sanctions for serious discovery-related

misconduct including witness tampering.  *See Riley v. City of New York,* 2015 WL

541346, at *7 (E.D.N.Y. Feb. 10, 2015) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32,

44-45 (1991)).  A court may also, in its discretion, impose sanctions for abusive litigation

practices pursuant to Fed.R.Civ.P. 37.[6]  *Id.* at *8 (citing 2d Circuit caselaw) (granting

defendant an adverse inference to overcome plaintiff's witness tampering by allowing a

jury to find other elemental aspects of plaintiff's allegations to be unworthy of belief).

Here, the evidence supports that Plaintiff contacted Gorski for an improper purpose,

specifically to persuade her to testify falsely at her deposition in order to perpetuate the

fraud that he was not convicted and incarcerated for a serious felony under the name of

Eliott Mills.  Such effort, in the circumstances of this case, can only be viewed as one

without a proper motive or colorable basis in law or fact.  *See Riley*, 2015 WL 541346,

at *7 (citing *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir.

2009) (court's use of inherent power in imposing sanctions warranted where litigation

misconduct is entirely without color and is motivated by an improper purpose); *see also*

18 U.S.C. § 1512(b)(1) (prohibiting any attempt to corruptly influence the testimony of a

witness in any official proceeding); N.Y. Penal Law § 215.10(b) (a person is guilty of

witness tampering when the person knowingly makes any false statements or practices

---

[6] The court notes that an adverse inference sanction is nondispositive.  *See Brock v. Logsdon*, 2022 WL 17488614, at **3-4 (W.D.N.Y. Dec. 7, 2022) (affirming magistrate judge's decision and order declining to impose an adverse inference for discovery abuse because decision was not clearly erroneous); *Rosa v. Genovese Drug Stores, Inc.*, 2017 WL 4350276, at *1 (E.D.N.Y. July 31, 2017) (treating magistrate judge's order imposing adverse inference instruction sanction as nondispositive by reviewing it under "clearly erroneous" standard).

any fraud or deceit with intent to affect the testimony of a witness in a civil action or proceeding).  Accordingly, the court finds, based on the record, Plaintiff engaged in attempted witness tampering with respect to Ms. Gorski's deposition testimony which warrants an adverse inference regarding Plaintiff's lack of credibility as a witness and that Plaintiff's statement on his December 22, 2009 employment application to Defendant Steuben that he had not been convicted of a crime was not truthful.  *See* (Dkt. 95-23) (Defendants' Exh. 22) at 8.  Defendants' motion on this issue is therefore GRANTED.

(11)   <u>Plaintiff's Alleged Perjury</u>.

Defendants further request the court impose sanctions on Plaintiff based on Plaintiff's perjury during Plaintiff's deposition on September 18, 2023, Wiltenburg Declaration (Dkt. 95-1) ¶¶ 23, 34, and Plaintiff's perjury while testifying at a North Carolina trial of one Aaron Wayman on narcotics trafficking charges on behalf of the state.  *Id.* ¶ 75.  Specifically, Defendants contend Plaintiff testified falsely at his deposition that he never has gone by another name, that he was never convicted of a crime, that he was not incarcerated between 2007 and 2009, and that he was employed by a youth program during the period of his incarceration.  Wiltenburg Declaration (Dkt. 95-1) ¶ 34.  Defendants further contend that Plaintiff falsely testified in the North Carolina trial[7] as Eliott Mills that he had not been arrested when in fact he had been convicted in 1998 of cocaine trafficking in North Carolina under the alias Tyrone

---

[7]   The date of the North Carolina trial does not appear on the record, however, based on a copy of Eliott Mills's plea agreement, *see* Dkt. 95-19, it occurred sometime between 1998 and 2001, *see id.* at 3 (explaining at Eliott Mill's 2001 sentencing that Mills had lied about his lack of an arrest while testifying at the trial of one Aaron Wayman as Mill's co-conspirator on the North Carolina narcotics trafficking charges).

Freeman. *Id.* ¶ 75 (referencing Dkt. 95-19 at **7-8).  Defendants therefore request the court to permit Defendants the right to introduce evidence of such perjury assuming Plaintiff is also the person known as Eliott Mills.  Defendants' Memorandum of Law (Dkt. 95-32) at 15-16 (citing cases). With respect to Defendants' request to submit the Plaintiff's perjurious testimony from the North Carolina trial as evidence in this case, the request must be DENIED.

Under Fed.R.Evid. 608(b) extrinsic evidence of a witness's misconduct is not admissible to establish a witness's lack of credibility.  It is well-established that although an opposing party is "'not permitted to adduce extrinsic evidence that a witness lied on a previous occasion," such party may nevertheless "ask questions to that end.'"  *Anson v. United States*, 294 F.Supp.3d 144, 153 (W.D.N.Y. 2018) (quoting *Walker v. Firestone Tire & Rubber Co.,* 412 F.2d 60, 63 (2d Cir. 1969)); *see also United States v. Bagaric*, 706 F.2d 42, 65 (2d Cir. 1983) ("Pursuant to Fed.R.Evid. 608(b), the trial judge may permit cross-examination into specific acts of misconduct if 'probative of truthfulness or untruthfulness.'").  As to Plaintiff's asserted four alleged perjuries committed by Plaintiff during Plaintiff's deposition, the court has evidence in the form of Plaintiff's admission to Barrett, his attorney, *see* Barrett Declaration (Dkt. 115) ¶ 100, that he was previously convicted and incarcerated under a false name, Eliott Mills, Plaintiff gave to police when he was arrested in 1998 on the armed robbery felony murder charge, *see, supra,* at 37, and given that Plaintiff was incarcerated under the name Eliott Mills, simple logic supports the conclusion that Plaintiff and the person known at Eliott Mills are one and the same.  Thus, the record supports a finding that Plaintiff committed perjury during his deposition thereby warranting sanctions.  *See Rossbach v. Montefiore Med. Ctr.*, 81

F.4th 124, 139 (2d Cir. 2023) ("'A witness commits perjury if he gives false testimony

concerning a material matter with the willful intent to provide false testimony, as

distinguished from incorrect testimony resulting from confusion, mistake, or faulty

memory.'" (quoting *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001))).

"When made during a civil deposition, statements are material if "a truthful answer might

reasonably be calculated to lead to the discovery of evidence admissible at the trial of

the underlying suit."  *United States v. Forde,* 740 F.Supp.2d 406, 412 (S.D.N.Y. July 29,

2010) (quoting *United States v. Kross*, 14 F.3d 751, 754 (2d Cir. 1994)).  In this case,

given that Plaintiff's deposition false testimony are collateral to the merits of Plaintiff's

claims, *e.g.*, that Plaintiff lied about his conviction record, are not probative of the merits

of Plaintiff's race discrimination and retaliation claims, dismissal is not warranted.  *See*

*cf., Rossbach*, 81 F.4th at 142 (holding district court acted within its discretion in

imposing a case-terminating sanction for fabrication of evidence that was intended to

mislead the court on the merits of the action); *Miller v. Time-Warner Communications,*

*Inc.*, 1999 WL 739528, at **2, 3 (S.D.N.Y. Sept. 29, 1999) (finding plaintiff not a credible

witness based on plaintiff's courtroom demeanor, inconsistent deposition testimony and

spoliation of evidence on the merits of Plaintiff's claim of employment discrimination

based on Plaintiff's race required dismissal as sanction).  Nevertheless, given the

importance of truthful testimony to the administration of justice, *see United States v.*

*Cornielle,* 171 F.3d 748, 753 (2d Cir. 1999) (". . . perjury goes to the very heart of the

administration of justice"), under the circumstances, the court finds an adverse

inference as to Plaintiff's identity a sufficient sanction based on Plaintiff's material

falsehoods and thus perjurious deposition testimony, specifically that he never used

another name, that he was not previously convicted of a crime, and that he was not incarcerated between 2007 and 2009.  As to Defendants' asserted perjury by Plaintiff regarding his employment in a youth program, the court finds such apparent falsehood to be of an immaterial nature as such false testimony is not likely to lead to the discovery of evidence admissible at trial  *See Forde*, 740 F.Supp.2d at 412. Defendants' motion on this issue is therefore GRANTED in part and DENIED in part.

(12)    Request to Modify Case Management Order.

Defendants further request the court enter a modified case management order to allow for completion of discovery as required in response to Defendants' motion to compel (Dkt. 95-1).  *See* Dkt. 95-1 at 25.  The court notes that the case is presently controlled by the Sixth Amended Scheduling Order filed, pursuant to consent of the parties (Dkt. 86), November 23, 2023 (Dkt. 90) which required, *inter alia*, discovery to conclude January 2, 2024.  Given the period of time needed to resolve Defendants' motion, it is apparent that of necessity there is good cause for Defendants' request. *See* Fed.R.Civ.P. 16(b) requiring good cause for an amended case management order. Accordingly, based on these circumstances, Defendants' request is GRANTED.  The parties are directed to file a proposed Seventh Amended Scheduling Order, either jointly or individually, scheduling the case to trial within 20 days of this Decision and Order.


**CONCLUSION**

Based on the foregoing, Defendants' motion (Dkt. 95) is GRANTED in part, DENIED in part, and DISMISSED in part as moot.  Plaintiff shall show cause why Defendants' expenses, including reasonable attorneys fees, incurred by Defendants in

connection with Defendants' motion should not be awarded pursuant to Fed.R.Civ.P. 37(a)(3)(B) & (C)(2), <u>not</u> <u>later</u> <u>than</u> <u>20</u> <u>days</u> following service of this Decision and Order. Defendants' response shall be served <u>within</u> <u>10</u> <u>days</u> thereafter; Plaintiff's reply, if any, shall be served <u>within</u> <u>5</u> <u>days</u>.  Oral argument shall be at the court's discretion.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dates:  September 18, 2024
          Buffalo, New York

Any appeal of this Decision and Order must be taken by filing written objection with the Clerk of Court **not later than 14 days** after service of this Decision and Order in accordance with Fed.R.Civ.P. 72(a).